SARAH E. SPIRES (SBN 252917)
sspires@skiermontderby.com
PAUL J. SKIERMONT
(*pro hac vice* pending)
pskiermont@skiermontderby.com
CHRISTOPHER HODGE
(*pro hac vice* pending)
chodge@skiermontderby.com
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, Texas 75201
Telephone:  (214) 978-6600
Facsimile:  (214) 978-6601

MIEKE K. MALMBERG (SBN 209992)
mmalmberg@skiermontderby.com
SKIERMONT DERBY LLP
800 Wilshire Boulevard,
Suite 1450
Los Angeles, California 90017
Telephone:  (213) 788-4500
Facsimile:  (213) 788-4545

*Attorneys for Plaintiff Swarmify, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SWARMIFY, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CLOUDFLARE, INC., a Delaware corporation,<br><br>　　　　　Defendants. | CASE NO. 3:17-cv-06957<br><br>**ORIGINAL COMPLAINT OF SWARMIFY, INC. FOR**<br><br>1. **MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836;**<br>2. **MISAPPROPRIATION OF TRADE SECRETS UNDER CALIFORNIA CIVIL CODE §§ 3426, *ET SEQ.*;**<br>3. **BREACH OF WRITTEN CONTRACT;**<br>4. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>5. **UNJUST ENRICHMENT;**<br>6. **FRAUD IN THE INDUCEMENT;**<br>7. **ACCOUNTING; AND**<br>8. **UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 ET SEQ**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Swarmify, Inc. ("Swarmify" or "Plaintiff") complains against Cloudflare, Inc. ("Cloudflare" or "Defendant") and alleges as follows:

## INTRODUCTION

1.  This is a straightforward case in which a large company—Cloudflare—took advantage of confidential acquisition talks with a small start-up company—Swarmify—to gain access to the smaller company's proprietary technology, and then wrongfully misappropriated that technology for its own use and profit.

2.  Swarmify is an innovator in the field of video streaming technology. It has pioneered a technique for improving delivery of internet video streaming—thus solving a problem that has plagued internet content delivery providers, and finally making faster streaming video a profitable business venture.

3.  In 2016, Swarmify was preparing to bring its technology to market, when it entered into discussions with internet content-delivery giant Cloudflare. During negotiations in 2016 and 2017, Swarmify thought it was setting itself up for a profitable business relationship with, and acquisition by, Cloudflare. Unknown to Swarmify at the time, though, Cloudflare intended to use these discussions to take Swarmify's video streaming technology for itself—and thus profit from technology that it had never been able to develop on its own, and for which it had never paid a fair price.

4.  That is precisely what Cloudflare did. Cloudflare ignored the nondisclosure agreement between the parties designed to protect the information revealed during their negotiations. Instead, Cloudflare used Swarmify's proprietary technology to develop its own video streaming product and, behind Swarmify's back, to market that product to its customers.

5.  Cloudflare's wrongful actions are in flagrant breach of the parties' non-disclosure agreement, are a willful misappropriation of Swarmify's trade secrets, and constitute unfair competition, fraud in the inducement, and breach of Cloudflare's implied covenant of good faith and fair dealing under California law. Cloudflare has

refused to remedy its wrongdoings, and so Swarmify is forced to turn to this Court for redress.

## THE PARTIES

6.  Plaintiff Swarmify, Inc. is a Delaware corporation with its principal place of business at 927 East Haven Avenue, Suite 208, Melbourne, Florida 32901.

7.  Defendant Cloudflare, Inc. is a Delaware corporation with its principal place of business at 101 Townsend Street, San Francisco, California 94107, and it can be served at that address.

## JURISDICTION AND VENUE

8.  The Court has subject matter jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c). The Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, because those claims arise from the same nucleus of operative facts, and form part of the same case and controversy, as Swarmify's federal claims.

9.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because Cloudflare is a resident of this District.

## INTRADISTRICT ASSIGNMENT

10. Assignment of this case to the San Francisco Division is proper pursuant to Local Rule 3-2(c) because a substantial part of the events or omissions which give rise to the claim occurred in San Francisco County.

## FACTS COMMON TO ALL CLAIMS

### Swarmify Develops its Technology

11. Swarmify is a small start-up founded in 2013 with one simple purpose in mind—to figure out how to reliably and affordably stream internet video. Swarmify's research showed that video comprises approximately 73% of internet usage and is on pace to quickly grow to over 90%. Yet, even with vastly improved data speed, Wi-Fi architecture, and internet availability, streaming video continues to be notoriously unreliable.

12. Over the next several years, Swarmify spent thousands of hours and millions of dollars researching and developing technology to vastly improve streaming video reliability. Swarmify eventually developed its own proprietary method for video streaming, and particularly for accelerating video delivery (the "Technology"). Swarmify's Technology makes internet video vastly more reliable and affordable, and nearly eliminates the problem of video buffering.

13. Swarmify developed its Technology with the intention of commercializing it and competing in the market for video streaming products and services, and it brought its Technology to market in late 2015 after more than two years of development. This development included countless hours of research, development, debug, and production by the entire Swarmify team, not only to create Swarmify's proprietary video streaming solution, but also to solve for various video problems on the Internet, such as the significant variance between browsers and generating non-obvious solutions to various browser bugs.

14. Recognizing the value and the novelty of its proprietary Technology, Swarmify submitted U.S. Patent Application No. 14/851,978 (the "Patent Application") on September 11, 2015, which covered a substantial portion of Swarmify's Technology. Swarmify filed its Patent Application subject to a nonpublication request in accordance with 35 U.S.C. § 122 and 37 C.F.R. § 1.213; the Patent Application is pending and remains unpublished pursuant to Swarmify's request.

15. Further recognizing the importance and value of its proprietary Technology, and the competitive advantage the Technology would give Swarmify in the marketplace, Swarmify treated its research into and development of the Technology, as well as the actual methods used in the Technology, as confidential. Swarmify therefore took, and continues to take, numerous steps to protect the Technology and the information used in its development (the "Confidential Information") and to maintain its secrecy.

16. By way of example, Swarmify requires its employees to sign confidentiality agreements that prohibit them from disclosing the Technology or Confidential Information. Swarmify also has implemented and enforced policies that require confidentiality and it has limited disclosure of its Technology and Confidential Information on a "need-to-know" basis. Moreover, Swarmify has limited the extent to which it discloses its Technology and Confidential Information to external business partners, ensuring that only necessary information is disclosed, and even then, only pursuant to non-disclosure agreements with those parties—as exemplified below. And, as noted above, Swarmify filed its Patent Application subject to a nonpublication request in order to prevent its competitors from practicing its Technology before the patent is granted.

### Swarmify and Cloudflare Enter Negotiations and Sign the NDA

17. In or about April 2016, Cloudflare approached Swarmify and stated that it was interested in acquiring or licensing Swarmify's Technology. Cloudflare, which provides networking products and services, such as website optimization, was not at that time developing video streaming technology. These conversations turned into discussions regarding a potential acquisition of Swarmify by Cloudflare after Cloudflare expressed an interest in such an acquisition.

18. This first round of acquisition discussions fell through in or about May 2016. However, in April through June of 2017, Cloudflare and Swarmify entered into a second round of acquisition discussions.

19. Both Cloudflare and Swarmify possessed highly confidential information regarding their respective proprietary technologies that they desired to protect, but that was necessary to reveal during acquisition discussions. In order to maintain the secrecy of such information—including Swarmify's Technology and other Confidential Information—Cloudflare and Swarmify entered into a Mutual Non-Disclosure Agreement ("NDA") effective April 22, 2016. A true and correct copy of this NDA is attached hereto as Exhibit 1.

20. The NDA, which was drafted by Cloudflare or at its behest, defines "confidential information" as "any and all technical and non-technical information" disclosed by one party to the other:

> which may include without limitation: (a) patent and patent applications, (b) trade secrets, and (c) proprietary and confidential information, ideas, techniques, sketches, drawings, works of authorship, models, inventions, know-how, processes, apparatuses, equipment, algorithms, software programs, software source documents, and formulae related to the current, future, and proposed products and services of each of the Parties, such as information concerning research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, purchasing, manufacturing, customer lists, investors, employees, business and contractual relationships, business forecasts, sales and merchandising, and marketing plans.

21. The definition of "confidential information" in the NDA encompasses Swarmify's Technology and its Confidential Information.

22. The NDA states that the parties may disclose each other's confidential information (as defined in the NDA) only to "those of the Receiving Party's employees or authorized representatives having a need to know and who have signed confidentiality agreements containing, or are otherwise bound by, confidentiality obligations at least as restrictive as those contained" in the NDA.

23. The NDA also states that the parties "will not modify, reverse engineer, decompile, create other works from, or disassemble any software programs contained in the Confidential Information of the other Party without the prior written consent of the other Party."

24. The NDA further requires that a party that wishes information to be treated as confidential must label or identify it as such at the time of disclosure.

25. Cloudflare and Swarmify agreed in the NDA that a breach of the NDA would cause irreparable damage to the injured party, and that injunctive relief would be an appropriate remedy.

26. The NDA is effective until five years after its effective date, or until termination by either party upon thirty days' written notice. The obligations under the NDA survive its termination.

27. Pursuant to the NDA, Swarmify disclosed to Cloudflare significant amounts of its Confidential Information and its proprietary trade secrets, including the Technology.

28. At all times, Swarmify's disclosure of its Confidential Information and Technology complied with the requirements of the NDA. Swarmify made clear that it considered the information it disclosed to be confidential. It marked relevant documents as confidential—for example, in an April 24, 2016 email, Swarmify's representative stated "Attached is the requested confidential info," and attached a zip file with the file name *SwarmifyConfidentialInfo.zip*. Similarly, when discussing Swarmify's non-published patent relating to the Technology, on May 8, 2017, Swarmify sent Cloudflare an email with the subject line *Swarmify Patent Info-Confidential*, and attaching another zip file with the file name *SwarmifyPatentInfo-Confidential.zip*. Again, in a June 12, 2017 email, Swarmify's representative labeled Swarmify's assets as "Confidential Info," and as including "Proprietary know-how, processes, and information relating to the business." And in a June 17, 2017 email, Swarmify's representative recounted how he "presented our proprietary Swarmify video solution to your team over a year ago and explained how it encompassed encoding, playback, and delivery all while optimizing network and compute resources. The software to enable this groundbreaking improvement to video streaming required the prior two years of time in research, development, debug, and production testing." In a June 23, 2017 email, Swarmify's representative again discussed that Swarmify's value lay primarily in its "various proprietary business processes" including "a good

deal of innovations we created to solve for video problems on the web." Additionally, representatives of both companies had numerous conversations in which they indicated that the information being discussed—including Swarmify's Confidential Information and its Technology—was confidential under the NDA.

29. Discussions between the parties made it clear that Cloudflare had not considered nor begun to develop or market the methods contemplated by Swarmify's Technology and its Confidential Information, and that Cloudflare had been unable to make video streaming adequately profitable. During the parties' discussions, Cloudflare representatives informed Swarmify that Cloudflare had no developers working on a video streaming solution, and that Swarmify's team would be the ones to create such a solution for Cloudflare following acquisition of Swarmify.

30. Cloudflare indicated that acquisition and implementation of Swarmify's Technology would create a very valuable business for Cloudflare.

31. Cloudflare also disclosed its own confidential and proprietary information to Swarmify. Swarmify has not disclosed any of Cloudflare's confidential information except to those persons permitted by the NDA.

**Cloudflare Violates the NDA and Misappropriates Swarmify's Trade Secrets**

32. Prior to the second round of acquisition talks between the parties in 2017, Swarmify had secured sufficient commitments from investors to continue commercializing video streaming products based on its Technology, and to market those products. Swarmify put this round of capital funding—that was scheduled to close on May 11, 2017—on hold in order to negotiate acquisition by Cloudflare, which Cloudflare represented as the purpose for Swarmify's disclosures to Cloudflare pursuant to the NDA. Additionally, Swarmify froze review of its Technology in the Cloudflare App Marketplace in order to negotiate acquisition by Cloudflare.

33. During this second round of discussions between the parties, Cloudflare repeatedly indicated its desire to acquire and implement Swarmify's Technology into its own platform.

34. For example, on May 8, 2017, Cloudflare representatives spoke with Swarmify's senior developer of the Technology. Cloudflare's representatives focused on the details of Swarmify's Technology, and the details of how Swarmify made its video streaming solution possible. Upon information and belief, Cloudflare used this and similar discussions (all of which took place under the NDA) to learn how to implement Swarmify's technology for itself.

35. In or about June 2017, the second round of acquisition discussions ended without bearing fruit. Swarmify continued its development of its Technology, working toward increasing the market share for its Technology, and waiting for approval of its patent application.

36. Upon information and belief, Cloudflare employed no developers working on a video streaming solution prior to June 2017.

37. Yet in less than three months - on or about September 27, 2017 - Cloudflare introduced a video streaming solution into the market. In conjunction with this, Cloudflare authored two blog articles on its website detailing this video streaming solution: "Introducing Cloudflare Stream" and "How Cloudflare Streams."

38. The blog articles discuss, among other things, the method by which Cloudflare purports to more efficiently stream video, including accelerating video delivery. Shockingly, these articles reveal that Cloudflare is now commercially using *Swarmify's* Technology, derived from the Confidential Information that Swarmify disclosed pursuant to the NDA.

39. Cloudflare's blog, including the September 27 articles, is geared toward potential consumers or buyers of Cloudflare's products, and may be seen by the general public. As a result, Cloudflare has flagrantly disregarded the NDA by posting information about Swarmify's Confidential Information and Technology to this public website.

40. Upon information and belief, and as admitted in Cloudflare's own blog posts, Cloudflare has incorporated Swarmify's Technology and its Confidential

Information into its own commercially-available products and services and is profiting from it. Upon further information and belief, Cloudflare has also shared some or all of Swarmify's Technology and Confidential Information with an outside vendor(s) in order to incorporate Swarmify's Technology and Confidential Information into Cloudflare's own commercially-available products and services. In doing so, Cloudflare is further misappropriating and wrongfully disclosing Swarmify's Technology and Confidential Information, as well as other information subject to protection under the NDA. Through these actions, Cloudflare is unfairly competing with Swarmify in the video streaming market.

41. Upon information and belief, Cloudflare never intended to acquire or license Swarmify's Technology, nor to acquire Swarmify; rather, it initiated discussions, and induced Swarmify to enter the NDA and disclose the Technology to Cloudflare, in an attempt to gain access to the Technology without paying for it.

42. On learning of Cloudflare's violation of the NDA and its misappropriation of Swarmify's Technology and Confidential Information, Swarmify contacted Cloudflare on October 3, 2017 to notify it of the violation and request removal of the blog posts. Cloudflare has refused to remedy its violation and Swarmify therefore turns to this Court for relief.

## FIRST COUNT

### Violation of Defend Trade Secrets Act (18 U.S.C. § 1836)

43. Swarmify incorporates each of the above paragraphs as though fully set forth herein.

44. Swarmify's Technology and its Confidential Information constitute protectable trade secrets as defined at 18 U.S.C. § 1839(3). Swarmify's trade secrets— protected under the NDA and disclosed to Cloudflare—comprised all of the pertinent and protectable details of Swarmify's Technology, without which implementation of Swarmify's Technology would be impossible. Swarmify's trade secrets disclosed to Cloudflare under the NDA included implementations of Swarmify's Technology as

well as highly proprietary and protectable software code, processes, and methods, all of which, collectively, provided the level of detail necessary to implement Swarmify's Technology. At all times Swarmify regarded the information it disclosed as protectable trade secrets and went to great lengths to ensure the information remained secret. In fact, Swarmify marked relevant documents as confidential—for example, in an April 24, 2016 email, Swarmify's representative stated "Attached is the requested confidential info," and attached a zip file with the file name *SwarmifyConfidentialInfo.zip*. Similarly, when discussing Swarmify's confidential, non-published patent relating to the Technology, Swarmify sent Cloudflare an email with the subject line *Swarmify Patent Info-Confidential*, and attaching another zip file with the file name *SwarmifyPatentInfo-Confidential.zip*. Again, in a June 12, 2017 email, Swarmify's representative labeled Swarmify's assets as "Confidential Info," and as including "Proprietary know-how, processes, and information relating to the business." And in a June 17, 2017 email, Swarmify's representative recounted how he "presented our proprietary Swarmify video solution to your team over a year ago and explained how it encompassed encoding, playback, and delivery all while optimizing network and compute resources. The software to enable this groundbreaking improvement to video streaming required the prior two years of time in research, development, debug, and production testing." In a June 23, 2017 email, Swarmify's representative again discussed that Swarmify's value lay primarily in its "various proprietary business processes" including "a good deal of innovations we created to solve for video problems on the web." Additionally, representatives of both companies had numerous conversations in which they separately and specifically indicated that the information being discussed—including Swarmify's Confidential Information and its Technology—was confidential under the NDA. In fact, one such discussion took place on May 8, 2017 between Cloudflare representatives and Swarmify's senior developer of Technology. During this discussion Swarmify explicitly confirmed Cloudflare's understanding that the information was highly proprietary and sensitive

and was being disclosed only pursuant to the NDA. Cloudflare representatives heavily focused their questions on requesting highly detailed information concerning Swarmify's Technology and the specific details of how Swarmify made its video streaming solution possible. Believing that the discussions were under the NDA and were meant to further the acquisition discussion, Swarmify's senior developer disclosed the information, never suspecting that Cloudflare would take the information and exploit it for its own benefit.

45. As detailed above, Swarmify has taken reasonable measures to keep this information secret, including, but not limited to: restricting the distribution of its Confidential Information to those only having need-to-know, filing its patent application relating to a portion of its Technology subject to a nonpublication request, and requiring its employees and business partners—like Cloudflare—to sign nondisclosure agreements before disseminating the information to them. Swarmify does not and has not consented to the use of any of its trade secrets by anyone other than authorized employees or affiliates for Swarmify's business or in cooperation with Swarmify.

46. Swarmify's Technology and Confidential Information derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure of the information. This value is reflected by other companies' inability to develop the same video streaming solutions in a profitable manner, and is exemplified by Cloudflare's inability to do so until it wrongfully appropriated Swarmify's trade secrets, at which point it promptly brought them to market.

47. Cloudflare wrongfully misappropriated Swarmify's trade secrets in the manner alleged above, by using improper means to acquire and use those trade secrets, and in breach of its duty to maintain the secrecy and limit the use of those trade secrets, including by knowingly violating the NDA. Cloudflare's misappropriation was intentional, willful, and malicious.

48. Cloudflare did not acquire knowledge of Swarmify's Technology through independent derivation, or any other lawful means of acquisition.

49. Cloudflare's misappropriation of Swarmify's trade secrets caused Cloudflare to receive a benefit that it otherwise would not have achieved—namely, the ability to rapidly commercialize and market its own video streaming product. Cloudflare was unjustly enriched by this benefit.

50. Swarmify's Technology—and now Cloudflare's misappropriated application of that Technology—is used in interstate commerce. The Technology is used to carry video streaming network traffic throughout the United States, including across state lines.

51. Swarmify seeks injunctive relief, as set forth below in its Request for Preliminary and Permanent Injunction. Swarmify also seeks compensatory damages, including but not limited to the unjust enrichment accruing to Cloudflare as a result of its misappropriation, or, in the alternative, payment of a reasonable royalty. Because Cloudflare's misappropriation was willful and malicious, Swarmify further seeks exemplary damages of two times the amount of its compensatory damages, pursuant to 18 U.S.C. § 1836(b)(3)(C), and its reasonable attorneys' fees, pursuant to 18 U.S.C. § 1836(b)(3)(D).

## SECOND COUNT

## Violation of California Uniform Trade Secrets Act (Cal. Civ. Code §§ 3426 et seq.)

52. Swarmify incorporates each of the above paragraphs as though fully set forth herein.

53. Swarmify's Technology and its Confidential Information constitute protectable trade secrets as defined at Cal. Civ. Code § 3426.1(d). Swarmify's trade secrets—protected under the NDA and disclosed to Cloudflare—comprised all of the pertinent and protectable details of Swarmify's Technology, without which implementation of Swarmify's Technology would be impossible. Swarmify's trade

secrets disclosed to Cloudflare under the NDA included implementations of Swarmify's Technology as well as highly proprietary and protectable software code, processes, and methods, all of which, collectively, provided the level of detail necessary to implement Swarmify's Technology. At all times Swarmify regarded the information it disclosed as protectable trade secrets and went to great lengths to ensure the information remained secret. In fact, Swarmify marked relevant documents as confidential—for example, in an April 24, 2016 email, Swarmify's representative stated "Attached is the requested confidential info," and attached a zip file with the file name *SwarmifyConfidentialInfo.zip*. Similarly, when discussing Swarmify's confidential, non-published patent relating to the Technology, Swarmify sent Cloudflare an email with the subject line *Swarmify Patent Info-Confidential*, and attaching another zip file with the file name *SwarmifyPatentInfo-Confidential.zip*. Again, in a June 12, 2017 email, Swarmify's representative labeled Swarmify's assets as "Confidential Info," and as including "Proprietary know-how, processes, and information relating to the business." And in a June 17, 2017 email, Swarmify's representative recounted how he "presented our proprietary Swarmify video solution to your team over a year ago and explained how it encompassed encoding, playback, and delivery all while optimizing network and compute resources. The software to enable this groundbreaking improvement to video streaming required the prior two years of time in research, development, debug, and production testing." In a June 23, 2017 email, Swarmify's representative again discussed that Swarmify's value lay primarily in its "various proprietary business processes" including "a good deal of innovations we created to solve for video problems on the web." Additionally, representatives of both companies had numerous conversations in which they separately and specifically indicated that the information being discussed—including Swarmify's Confidential Information and its Technology—was confidential under the NDA. In fact, one such discussion took place on May 8, 2017 between Cloudflare representatives and Swarmify's senior developer of Technology. During this discussion Swarmify

explicitly confirmed Cloudflare's understanding that the information was highly proprietary and sensitive and was being disclosed only pursuant to the NDA. Cloudflare representatives heavily focused their questions on requesting highly detailed information concerning Swarmify's Technology and the specific details of how Swarmify made its video streaming solution possible. Believing that the discussions were under the NDA and were meant to further the acquisition discussion, Swarmify's senior developer disclosed the information, never suspecting that Cloudflare would take the information and exploit it for its own benefit.

54. Swarmify's Technology and Confidential Information derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. This value is reflected by other companies' inability to develop the same video streaming solutions in a profitable manner, and is exemplified by Cloudflare's inability to do so until it wrongfully appropriated Swarmify's trade secrets, at which point it promptly brought them to market.

55. As detailed above, Swarmify has taken reasonable efforts under the circumstances to keep this information secret, including, but not limited to: restricting the distribution of its Confidential Information to those only having need-to-know, filing its patent application relating to a portion of its Technology subject to a nonpublication request, and requiring its employees and business partners—like Cloudflare—to sign nondisclosure agreements before disseminating the information to them. Swarmify does not and has not consented to the use of any of its trade secrets by anyone other than authorized employees or affiliates for Swarmify's business or in cooperation with Swarmify.

56. Cloudflare wrongfully misappropriated Swarmify's trade secrets in the manner alleged above, by using improper means to acquire and use those trade secrets, and in breach of its duty to maintain the secrecy and limit the use of those trade secrets, including by knowingly violating the NDA. Swarmify did not expressly nor

impliedly consent to Cloudflare's use or disclosure of its trade secrets. Cloudflare's misappropriation was intentional, willful, and malicious.

57. Cloudflare did not acquire knowledge of Swarmify's Technology through reverse engineering, independent derivation, or any other lawful means of acquisition.

58. Cloudflare's misappropriation of Swarmify's trade secrets caused Cloudflare to receive a benefit that it otherwise would not have achieved—namely, the ability to rapidly commercialize and market its own video streaming product. Cloudflare was unjustly enriched by this benefit.

59. Swarmify seeks injunctive relief, as set forth below in its Request for Preliminary and Permanent Injunction. Swarmify also seeks compensatory damages, including but not limited to the unjust enrichment accruing to Cloudflare as a result of its misappropriation, or, in the alternative, payment of a reasonable royalty until Cloudflare's use can be prohibited. Because Cloudflare's misappropriation was willful and malicious, Swarmify further seeks exemplary damages of two times the amount of its compensatory damages, pursuant to Cal. Civ. Code § 3426.3(c), and its reasonable costs and attorneys' fees, pursuant to Cal. Civ. Code § 3426.4.

## THIRD COUNT

### Breach of Written Contract

60. Swarmify incorporates each of the above paragraphs as though fully set forth herein.

61. As set forth above, the parties entered into the NDA to protect the confidentiality of their respective proprietary information, including Swarmify's Technology and its Confidential Information. The NDA constitutes a valid written contract between the parties.

62. Among other things, the NDA clearly set forth Cloudflare's obligations to protect the secrecy of Swarmify's proprietary and confidential information, including its Technology and Confidential Information, as described above.

63. Cloudflare materially breached its obligations under the NDA when it took Swarmify's Technology and Confidential Information for its use in its own commercial products, and when Cloudflare further disclosed a portion of that information in blog posts on its website.

64. Swarmify has performed all promises, obligations, and conditions precedent imposed on it by the NDA, or is otherwise excused from performance.

65. Cloudflare's material breach has caused significant damage to Swarmify. Swarmify therefore seeks compensatory damages as a result of Cloudflare's breach. Moreover, because Cloudflare's breach has caused, and continues to cause, irreparable harm for which damages would not be an adequate remedy, Swarmify seeks injunctive relief as set forth below in its Request for Preliminary and Permanent Injunction. Cloudflare, as a signatory to the NDA, has admitted that a breach of the NDA results in irreparable harm and that injunctive relief is appropriate for such breach.

## FOURTH COUNT

### Breach of Implied Covenant of Good Faith and Fair Dealing

66. Swarmify incorporates each of the above paragraphs as though fully set forth herein.

67. As set forth above, Swarmify and Cloudflare entered into the NDA, which was a valid contract between the parties.

68. Pursuant to California law, the NDA is a written contract and thus imposes on each party a duty to deal fairly and in good faith with each other, and to refrain from doing anything that unduly interferes with the purpose of the contract.

69. Swarmify has performed all promises, obligations, and conditions precedent imposed on it by the NDA, or is otherwise excused from performance.

70. Cloudflare breached the implied covenant of good faith and fair dealing by, among other things, inducing Swarmify to provide its Trade Secrets and Confidential Information to Cloudflare, when Cloudflare intended only to use that information to its own benefit rather than in connection with a partnership with, or

acquisition of, Swarmify. Not only did Cloudflare reveal Swarmify's Technology and Confidential Information, but Cloudflare's use of Swarmify's confidential and proprietary information for itself also kept Swarmify from reaping the full benefits of that information.

71. Cloudflare's bad faith acts and its unfair dealing have damaged Swarmify. Among other things, Cloudflare's improper use of Swarmify's Technology and Confidential Information has prevented Swarmify from being the only one to market its own revolutionary technology—whether on its own or through license to or acquisition by another company—and thus has deprived Swarmify of market share and the opportunity to attract investment.

## FIFTH COUNT

## Unjust Enrichment

72. Swarmify incorporates each of the above paragraphs as though fully set forth herein.

73. As a result of its receipt and improper use of Swarmify's Technology and Confidential Information, Cloudflare has received a significant benefit at Swarmify's expense, as set forth above. Rather than spending time and money to research and develop effective video streaming methods on its own, or paying a fair price for their licensing or acquisition, Cloudflare has received the free benefit of Swarmify's efforts and experience.

74. The benefit to Cloudflare came at significant expense to Swarmify, which, as noted above, invested substantial time, money, and effort developing its Technology.

75. Cloudflare's wrongful acts entitle Swarmify to restitution in the amount by which Cloudflare has been unjustly enriched.

## SIXTH COUNT

### Fraud in the Inducement

76. Swarmify incorporates each of the above paragraphs as though fully set forth herein.

77. As discussed above, Cloudflare made a material representation to Swarmify that it desired to partner with Swarmify in marketing Swarmify's Technology—whether by licensing or purchasing the Technology, or by acquiring Swarmify.

78. That representation was false when made, as, upon information and belief, Cloudflare did not intend to partner with Swarmify but only sought to gain access to its Technology and its Confidential Information.

79. Upon information and belief, Cloudflare made the representation with the express intention of inducing Swarmify to enter into the NDA and to reveal its Technology and its Confidential Information to Cloudflare.

80. In entering into the NDA and sharing its Technology and its Confidential Information with Cloudflare, Swarmify reasonably relied on Cloudflare's representation that it intended to either pay for the Technology or acquire Swarmify. For example, Swarmify had no reason to doubt Cloudflare's representation, as discussions between the parties made it clear that Cloudflare had not considered nor begun to develop or market the methods contemplated by Swarmify's Technology and its Confidential Information, and that Cloudflare had been unable to make video streaming adequately profitable. Additionally, Cloudflare representatives informed Swarmify that Cloudflare had no developers working on a video streaming solution, and that Swarmify's team would be the ones to create such a solution for Cloudflare following acquisition of Swarmify. Moreover, during the second round of acquisition discussions, Swarmify informed Cloudflare that it was about to close on a round of investment funding, and Cloudflare encouraged Swarmify to postpone this funding closing in order to pursue discussions with Cloudflare.

81. As discussed above, Cloudflare's fraudulent misrepresentations have damaged Swarmify.

82. Moreover, Cloudflare made its misrepresentations with malice and oppression, and with actual and specific intent to harm and to defraud Swarmify. In particular, upon information and belief, Cloudflare knew, prior to the execution of the NDA and Swarmify's disclosure of its Technology and Confidential Information, that it had no intention to partner with Swarmify or to pay for Swarmify's Technology. Swarmify therefore seeks compensatory damages as a result of Cloudflare's breach, as well as exemplary and punitive damages pursuant to Cal. Civ. Code § 3294.

## SEVENTH COUNT

### Accounting

83. Swarmify incorporates each of the above paragraphs as though fully set forth herein.

84. As set forth above, Swarmify is entitled to damages and restitution for Cloudflare's wrongful acts. This includes amounts that can only be ascertained by an accounting, including but not limited to Cloudflare's earnings from its use of Swarmify's Technology and Confidential Information.

85. Swarmify therefore demands an accounting of such sums.

## EIGHTH COUNT

### Unfair Competition (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

86. Swarmify incorporates each of the above paragraphs as though fully set forth herein.

87. Cloudflare was obligated to protect not only Swarmify's trade secrets, but also any non-trade-secret information from Swarmify that became "confidential information" under the NDA, regardless of its status as a trade secret.

88. As set forth above, in addition to information categorized as trade secrets, Cloudflare has also used and disclosed Swarmify's non-trade-secret information furnished under the NDA for its own benefit, including to commercialize and market

its own video streaming product, and in violation of its duty to maintain the secrecy of that information.

89. Through its conduct described above, Cloudflare has engaged in unlawful, unfair, and misleading business practices that have caused Swarmify to suffer harm and lose business and money. Cloudflare's unfair competition includes, but is not limited to, its unlawful breach of the NDA, its misappropriation of Swarmify's proprietary information, and its use of Swarmify's proprietary information to commercialize and market video streaming products to the detriment of Swarmify.

90. As a result of Cloudflare's unfair competition, Swarmify has suffered monetary damages and has suffered harm to its relationships, goodwill, and reputation. Swarmify therefore requests injunctive relief as set forth below in its Request for Preliminary and Permanent Injunction, as well as its attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION

91. Swarmify incorporates each of the above paragraphs as though fully set forth herein.

92. As the result of Cloudflare's misconduct, Swarmify has suffered, and will continue to suffer, competitive harm, irreparable injury, and significant damages. To prevent continued trade secret misappropriation and continued breach of the NDA, and because Swarmify's remedy at law is inadequate, Swarmify seeks, in addition to damages, preliminary and permanent injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A), as well as Cal. Civ. Code § 3426.2, Cal. Bus. & Prof. Code § 17203, and this Court's equitable powers, to recover and protect its Technology and Confidential Information and to protect its legitimate business interests.

93. Upon information and belief, if Cloudflare is not enjoined, it will continue to misappropriate and use Swarmify's Technology and Confidential Information for its own commercial gain and to Swarmify's detriment, and it will continue to disseminate that information to the broader marketplace. An injunction is therefore necessary to

prevent Cloudflare's actual and threatened misappropriation of Swarmify's trade secrets.

94. Swarmify requests that the Court take affirmative steps to protect Swarmify's trade secrets, including by ordering Cloudflare to: cease and desist from using Swarmify's Technology and Confidential Information; return or destroy all of Swarmify's Technology and Confidential Information remaining in Cloudflare's possession; remove the blog posts mentioned above; take measures sufficient to ensure that any indexed or archived versions of the blog posts are removed from internet search engines, such as Google, Yahoo, and Bing; and coordinate with vendors or other third parties to notify them that they may not disclose or use Swarmify's Technology or Confidential Information, and to retrieve any such information from those third parties.

## **PRAYER FOR RELIEF**

WHEREFORE, Swarmify respectfully requests the following relief from the Court:

95. Enter a Judgment and Order in Swarmify's favor and against Cloudflare as to all claims in this Complaint;

96. Award Swarmify damages as described in each of the above claims, to include Swarmify's actual damages and any unjust enrichment gained by Cloudflare due to its wrongful actions;

97. In the alternative, award Swarmify a reasonable royalty for Cloudflare's wrongful appropriation and use of its trade secrets;

98. Award exemplary damages to Swarmify in the amount of two times its compensatory damages;

99. Award punitive damages to Swarmify in an amount sufficient to deter Cloudflare and others from future similar conduct;

100. Enter a preliminary and permanent injunction ordering Cloudflare to:

a. Cease and desist from further use of Swarmify's Technology and Confidential information;

b. Return or destroy all of Swarmify's Technology and Confidential Information remaining in Cloudflare's possession;

c. Remove the September 27, 2017 blog posts titled "Introducing Cloudflare Stream," and "How Cloudflare Streams," as well as any other posts containing Swarmify's Technology and Confidential Information, from its website;

d. Take measures sufficient to ensure that any indexed or archived versions of the blog posts are removed from internet search engines, such as Google, Yahoo, and Bing; and

e. Coordinate with vendors or other third parties to notify them that they may not disclose or use Swarmify's Technology or Confidential Information, and to retrieve any such information from those third parties;

101.   Award Swarmify its costs and reasonable attorneys' fees; and

102.   Grant Swarmify such other and further relief to which it may be justly entitled.

Dated:  December 6, 2017

Respectfully submitted,

SKIERMONT DERBY LLP


By: _____

Sarah E. Spires

Attorney for Swarmify, Inc.

## **DEMAND FOR JURY TRIAL**

Swarmify respectfully demands a trial by jury on all issues so triable.

Dated:  December 6, 2017                    Respectfully submitted,


SKIERMONT DERBY LLP



By:  _____

            Sarah E. Spires
            Attorney for Swarmify, Inc.