SARAH E. SPIRES (SBN 252917)
sspires@skiermontderby.com
PAUL J. SKIERMONT
(*pro hac vice*)
pskiermont@skiermontderby.com
CHRISTOPHER HODGE
(*pro hac vice*)
chodge@skiermontderby.com
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, Texas 75201
Telephone: (214) 978-6600
Facsimile: (214) 978-6601

MIEKE K. MALMBERG (SBN 209992)
mmalmberg@skiermontderby.com
SKIERMONT DERBY LLP
800 Wilshire Boulevard, Suite 1450
Los Angeles, California 90017
Telephone: (213) 788-4500
Facsimile: (213) 788-4545

*Attorneys for Plaintiff Swarmify, Inc.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| SWARMIFY, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLOUDFLARE, INC., a Delaware corporation,<br><br>Defendants. | CASE NO. 3:17-cv-06957 WHA<br><br>**DECLARATION OF NATHAN BARNETT IN SUPPORT OF CLOUDFLARE, INC'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL PORTIONS OF CLOUDFLARE, INC'S RESPONSE TO SWARMIFY'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: February 15, 2018<br>Time: 8:00 a.m.<br>Place: Courtroom 12, 19th Floor<br>Judge: Hon. William H. Alsup |

I, Nathan Barnett, declare as follows:

1. My name is Nathan Barnett. I am the CEO and co-founder of Swarmify, Inc. ("Swarmify") and am submitting this declaration in support of Defendant Cloudflare, Inc.'s ("Cloudflare") Administrative Motion to File under Seal Portions of Cloudflare, Inc.'s Response to Swarmify's Motion for Preliminary Injunction (Doc. 41) ("Motion to Seal"). It is by virtue of my position with Swarmify, as well as my personal involvement with the below events, that I have personal knowledge of the matters set forth below.

2. After years of research and effort, Swarmify developed its own proprietary method for streaming internet video, and particularly for accelerating video delivery while minimizing buffering (the "Technology"). Swarmify's Technology, which it markets to and is used by internet content providers throughout the United States and worldwide, makes internet video vastly more reliable and affordable. Marketing and delivery of the Technology constitutes Swarmify's primary business and source of income.

3. Swarmify considers this Technology, as well as the research and information used in development of the Technology and the methods used in its implementation, to be its confidential and proprietary information (the "Confidential Information").

4. Swarmify goes to great lengths to protect its Technology and Proprietary Information. For example, it filed its patent application relating to the Technology subject to a nonpublication request in accordance with 35 U.S.C. § 122 and 37 C.F.R. § 1.213, in order to keep its competitors from gaining access to the details of its Technology and replicating it before Swarmify received a patent. Additionally, among other steps, Swarmify requires its employees to sign confidentiality agreements; it has implemented and enforced company policies that require confidentiality; it has limited disclosure of its Technology and Confidential Information on a "need-to-

know" basis; it maintains physical security over its offices and over its computer systems; and it limits the extent to which it discloses its Technology and Confidential Information to external business partners and other third parties, ensuring that only necessary information is disclosed to such parties and making such disclosures pursuant to nondisclosure agreements with those parties.

5. If Swarmify's Technology and Confidential Information were made public, its competitors would enjoy the benefits of Swarmify's innovation, and of its significant time and monetary investment into research and development of the Technology, at little to no cost to those competitors. Swarmify's competitors—like Defendant Cloudflare, Inc. ("Cloudflare")—could then crowd it out of the market and significantly damage it financially, given that the Technology comprises Swarmify's primary product in the market.

6. During negotiations with Cloudflare relating to its potential acquisition of Swarmify, or acquisition or licensing of Swarmify's Technology, Swarmify shared materials related to Swarmify's internal valuation of its assets and other sensitive company information relevant to acquisition (the "Acquisition Information.")

7. Swarmify considers its Acquisition Information to be among its confidential and proprietary information, and protects it accordingly, including ensuring that only necessary information is disclosed to such parties and making such disclosures pursuant to nondisclosure agreements with those parties. The Acquisition Information discussed below is not made public.

8. Disclosure of the Acquisition Information would place Swarmify at a competitive disadvantage. Swarmify's discussions with Cloudflare involved a great deal of information regarding Swarmify's assets, processes, and internal valuations and self-assessments. Swarmify remains a small company with the potential to be acquired by, or to sell or license its technology to,

another business. Disclosure of the Acquisition Information prematurely or on terms other than Swarmify's to a potential acquirer would greatly impact Swarmify's ability to gain maximum value out of such a transaction.

9. The documents that Swarmify seeks to maintained filed under seal or in redacted form, and which are discussed below, contain Swarmify's confidential, proprietary, and trade secret information. This information falls into either of two categories: (1) sensitive material that discloses all or significant parts of Swarmify's Technology and Confidential Information, including the means by which Swarmify implements its Technology; or (2) sensitive information that discloses Acquisition Information. As set forth above, disclosure of this material will place Swarmify at a competitive disadvantage in the market for video streaming services. Good cause therefore exists to permit these limited documents to be filed in redacted form or under seal.

**A. Cloudflare's Response to Swarmify's Motion for Preliminary Injunction ("Response")**

10. Cloudflare's Response contains descriptions of Swarmify's Technology as well as limited Acquisition Information.

11. The material highlighted at i:10, 11, and 20 contains descriptions of portions of Swarmify's Technology, including specific techniques that Swarmify uses unique to its proprietary video streaming method and is a part of Swarmify's trade secrets. These descriptions, when aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets.

12. The material highlighted at 1:7 and 1:9-10 contains descriptions of portions of Swarmify's Technology, including specific techniques that Swarmify uses unique to its proprietary video streaming method and is a part of Swarmify's trade secrets. These descriptions, when aggregated with other non-public

material, could lead a competitor to potentially derive Swarmify's trade secrets.

13. The material highlighted at 4:13 – 5:4 contains a detailed description of the Technology and sets forth the core of what Swarmify considers its trade secrets (as quoted from Swarmify's Motion for Preliminary Injunction). This includes a description of how Swarmify's video streaming solution works and constitutes the core of Swarmify's proprietary trade secret information.

14. The material highlighted at 5:11-16 contains descriptions of portions of Swarmify's Technology, including specific techniques that Swarmify uses unique to its proprietary video streaming method and is a part of Swarmify's trade secrets. These descriptions, when aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets.

15. The material highlighted at 7:4, 7:6-19, 7:22-28, 8:1-2, 8:4-11, 8:13-14, 8:16-22, 8:25-28, 9:1-5, and 9:12 contains detailed descriptions of Swarmify's Technology and its core trade secrets, including quotes or purported summaries of Swarmify's description of its trade secrets from its Motion for Preliminary Injunction, as well as Cloudflare's use of Swarmify's proprietary Technology.

16. The material highlighted at 10:19, 10:22-23, 10:25-26, 11:1-2, 11:7, 11:10-11, and 11:12-15 contains descriptions of portions of Swarmify's Technology, including specific techniques that Swarmify uses unique to its proprietary video streaming method and is a part of Swarmify's trade secrets. These descriptions, when aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets.

17. The material highlighted at 12:2, 12:25-13:3, 13:6, 13:21, 14:13-16 contains descriptions of portions of Swarmify's Technology, including specific techniques that Swarmify uses unique to its proprietary video streaming

method and is a part of Swarmify's trade secrets. These descriptions, when aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets.

18. The material highlighted at 15:1-3, 15:14-15, 15:19-25, and 15:27-16:1 contains descriptions of portions of Swarmify's Technology, including specific techniques that Swarmify uses unique to its proprietary video streaming method and is a part of Swarmify's trade secrets. These descriptions, when aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets.

19. The material highlighted at 18:20 and 18:23-24 contains descriptions of portions of Swarmify's Technology, including specific techniques that Swarmify uses unique to its proprietary video streaming method and is a part of Swarmify's trade secrets. These descriptions, when aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets.

20. The material highlighted at 19:8, 19:15-21, 19:27-20:1, 20:5-8, and 20:24 contains detailed descriptions of the methods underlying Swarmify's Technology and its core trade secrets, including specific techniques that Swarmify uses unique to its proprietary video streaming method. These descriptions, alone or when aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets.

21. The material highlighted at 18:20 and 18:23-24 contains descriptions of portions of Swarmify's Technology, including specific techniques that Swarmify uses unique to its proprietary video streaming method and is a part of Swarmify's trade secrets. These descriptions, when aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets.

22. The material highlighted at 21:4-6, and 21:14-26 contains descriptions of portions of Swarmify's Technology, including specific techniques that Swarmify uses unique to its proprietary video streaming method and is a part of Swarmify's trade secrets. These descriptions, when aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets.

23. The material highlighted at 22:7-8, 22:10-13, 22:15-23:2, 23:5-6, and 23:17-19 contains descriptions of portions of Swarmify's Technology, including specific techniques that Swarmify uses unique to its proprietary video streaming method and is a part of Swarmify's trade secrets. These descriptions, alone or when aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets.

24. This information relating to Swarmify's Technology should be redacted and remain under seal because, if public, Swarmify's competitors would have access to Swarmify's sensitive trade secrets and could replicate Swarmify's confidential and proprietary processes. Those competitors would enjoy the benefits of Swarmify's innovation, and of its significant time and monetary investment into research and development of the Technology, at little to no cost to those competitors. They could then crowd Swarmify out of the market and significantly damage it financially, given that the Technology comprises Swarmify's primary product in the market.

25. Even though portions of the above material may, standing alone, potentially be public information, the aggregation of that information constitutes a portion of Swarmify's trade secrets, and therefore the public disclosure of all this information aggregated together as in the Response would disclose significant aspects of Swarmify's trade secrets.

26. The material highlighted at i:7, 1:17, 3:25 constitutes confidential Acquisition Information. Specifically, each of those excerpts states a portion

of the purchase price for which Swarmify offered to sell its business to Cloudflare (subject to other terms).

27. The material highlighted at 2:13-21 constitutes confidential Acquisition Information. It gives information regarding Swarmify's internal financial status that Swarmify transmitted to Cloudflare during acquisition discussions, and gives details of Swarmify's financial condition not available to the public.

28. The material highlighted at 4:1-10 and 4:25-28 constitutes confidential Acquisition Information. It details the parties' negotiating positions regarding Cloudflare's potential acquisition of Swarmify, including Cloudflare's CEO's supposed valuation of Swarmify's assets and reasons for not closing the acquisition.

29. The material highlighted at 18:26-27 is confidential Acquisition Information, and it gives numbers for the annual value that Cloudflare and Swarmify placed on Cloudflare's acquisition of Swarmify or its Technology, as well as stating a portion of the purchase price for which Swarmify offered to sell its business to Cloudflare (subject to other terms).

30. The material highlighted at 24:22-26 is confidential Acquisition Information. It gives information regarding Swarmify's internal financial status that Swarmify transmitted to Cloudflare during acquisition discussions, and gives details of Swarmify's financial condition not available to the public. It also states a portion of the purchase price for which Swarmify offered to sell its business to Cloudflare (subject to other terms).

31. Disclosure of the above confidential Acquisition Information to the public would harm Swarmify because it could then be obtained by other potential acquirers and thus would greatly impact Swarmify's ability to gain maximum value out of a possible future acquisition or licensing transaction.

32. The material highlighted at 16:26-28 discloses Swarmify's confidential customer information and names one or more of Swarmify's customers. Public disclosure of this information would damage Swarmify because its competitors would gain knowledge of Swarmify's customers and be able to more effectively target them and attempt to poach them from Swarmify.
33. Swarmify does not claim confidentiality over the material highlighted at 1:4-6, 2:9, 3:6-7, 3:15-16, 3:18-19, 3:24, 6:14-15, 6:27-28, 11:19, 11:23, 13:28, 14:19, 14:27-28, 18:12-19, 20:18-23, 21:4, 21:7-13, 21:27-22:6, 23:25-28, or 24:1-3.

**B.     Declaration of Dane Knecht ("Knecht Declaration")**

34. The Knecht Declaration also contains confidential and proprietary information relating to the Technology and Acquisition Information.
35. The material at 4:7-11 and 5:7-10 describes a prior version of Swarmify's methods for video streaming not at issue in this lawsuit but which, when aggregated with other information in this lawsuit, could be used to derive Swarmify's trade secrets related to the Technology. Moreover, while not the Technology at issue in this lawsuit, this methodology constitutes a trade secret in its own right.
36. The material at 4:16-21 and 4:23-26 contains descriptions of portions of Swarmify's Technology, including specific techniques that Swarmify uses unique to its proprietary video streaming method and is a part of Swarmify's trade secrets. These descriptions, alone or when aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets.
37. This information relating to Swarmify's Technology should be redacted and remain under seal because, if public, Swarmify's competitors would have access to Swarmify's sensitive trade secrets and could replicate Swarmify's confidential and proprietary processes. Those competitors would enjoy the

benefits of Swarmify's innovation, and of its significant time and monetary investment into research and development of the Technology, at little to no cost to those competitors. They could then crowd Swarmify out of the market and significantly damage it financially, given that the Technology comprises Swarmify's primary product in the market.

38. Even though portions of the above material may, standing alone, potentially be public information, the aggregation of that information constitutes a portion of Swarmify's trade secrets, and therefore the public disclosure of all this information aggregated together as in the Response would disclose significant aspects of Swarmify's trade secrets.

39. The material at 5:21 constitutes confidential Acquisition Information. Specifically, it states a portion of the purchase price for which Swarmify offered to sell its business to Cloudflare (subject to other terms).

40. Disclosure of this information to the public would harm Swarmify because it could then be obtained by other potential acquirers and thus would greatly impact Swarmify's ability to gain maximum value out of a possible future acquisition or licensing transaction.

**C.    Declaration of Samuel S. Coates ("Coates Declaration")**

41. The Coates Declaration at 1:23-26 discloses a potential venture capital investor to whom Swarmify was introduced. Public disclosure of this information would harm Swarmify because its competitors would then have access to potential sources of funding that could enable them to undercut Swarmify.

**D.    Declaration of Dr. Michael Zinke ("Zinke Declaration")**

42. The Zinke Declaration at 6:5-11 and 10:3-4 contains detailed descriptions of the methods underlying Swarmify's Technology and portions of its core trade secrets, including specific techniques that Swarmify uses unique to its proprietary video streaming method. These descriptions, alone or when

aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets.

43. This information relating to Swarmify's Technology should be redacted and remain under seal because, if public, Swarmify's competitors would have access to Swarmify's sensitive trade secrets and could replicate Swarmify's confidential and proprietary processes. Those competitors would enjoy the benefits of Swarmify's innovation, and of its significant time and monetary investment into research and development of the Technology, at little to no cost to those competitors. They could then crowd Swarmify out of the market and significantly damage it financially, given that the Technology comprises Swarmify's primary product in the market.

44. Even though portions of the above material may, standing alone, potentially be public information, the aggregation of that information constitutes a portion of Swarmify's trade secrets, and therefore the public disclosure of all this information aggregated together as in the Response would disclose significant aspects of Swarmify's trade secrets.

### E.     Exhibit 2

45. This is a chat exchange that describes a prior version of Swarmify's methods for video streaming not at issue in this lawsuit but which, when aggregated with other information in this lawsuit, could be used to derive Swarmify's trade secrets related to the Technology. Moreover, while not the Technology at issue in this lawsuit, this methodology constitutes a trade secret in its own right.

46. This information relating to Swarmify's Technology should be redacted and remain under seal because, if public, Swarmify's competitors would have access to Swarmify's sensitive trade secrets and could replicate Swarmify's confidential and proprietary processes. Those competitors would enjoy the benefits of Swarmify's innovation, and of its significant time and monetary

investment into research and development of the Technology, at little to no cost to those competitors. They could then crowd Swarmify out of the market and significantly damage it financially, given that the Technology comprises Swarmify's primary product in the market.

### F. Exhibit 10

47. Exhibit 10 comprises confidential Acquisition Information. It gives information regarding Swarmify's personnel details and salary information that it transmitted to Cloudflare as part of acquisition discussions. It gives details of Swarmify's confidential personnel and salary information not available to the public.

48. Disclosure of the above confidential Acquisition Information to the public would harm Swarmify because it could then be obtained by other potential acquirers and thus would greatly impact Swarmify's ability to gain maximum value out of a possible future acquisition or licensing transaction.

### G. Exhibit 11

49. This comprises confidential Acquisition Information. It gives information regarding Swarmify's internal financial status that Swarmify transmitted to Cloudflare during acquisition discussions, and gives details of Swarmify's financial condition not available to the public. It also states a portion of the purchase price for which Swarmify offered to sell its business to Cloudflare (subject to other terms).

50. Disclosure of the above confidential Acquisition Information to the public would harm Swarmify because it could then be obtained by other potential acquirers and thus would greatly impact Swarmify's ability to gain maximum value out of a possible future acquisition or licensing transaction.

### H. Exhibit 12

51. This comprises confidential Acquisition Information. It gives information regarding Swarmify's internal financial status that Swarmify transmitted to

Cloudflare during acquisition discussions, and gives details of Swarmify's financial condition not available to the public. It also states a portion of the purchase price for which Swarmify offered to sell its business to Cloudflare (subject to other terms).

52. Disclosure of the above confidential Acquisition Information to the public would harm Swarmify because it could then be obtained by other potential acquirers and thus would greatly impact Swarmify's ability to gain maximum value out of a possible future acquisition or licensing transaction.

### I.     Exhibit 13

53. This comprises confidential Acquisition Information. It details the parties' negotiating positions regarding a potential acquisition of Swarmify, as well as details of Swarmify's financial condition not available to the public. It also states a portion of the purchase price for which Swarmify offered to sell its business to Cloudflare (subject to other terms).

54. Disclosure of the above confidential Acquisition Information to the public would harm Swarmify because it could then be obtained by other potential acquirers and thus would greatly impact Swarmify's ability to gain maximum value out of a possible future acquisition or licensing transaction.

### J.     Exhibit 15

55. This is a copy of an Office Action on Swarmify's U.S. Patent Application No. 14/851,978—Swarmify's patent application for its Technology. Swarmify submitted its patent application pursuant to a nonpublication request in order to prevent its competitors from gaining access to its trade secrets and practicing its Technology before Swarmify receives a patent. It transmitted its patent application, and this Office Action, to Cloudflare pursuant to the NDA in furtherance of acquisition discussions. As with Swarmify's patent application, the Office Action is not publicly available. The Office Application describes aspects of Swarmify's Technology in great

detail, and it discloses core portions of Swarmify's proprietary trade secret information.

56. This information should remain under seal because, if public, Swarmify's competitors would have access to Swarmify's sensitive trade secrets and could replicate Swarmify's confidential and proprietary processes. Those competitors would enjoy the benefits of Swarmify's innovation, and of its significant time and monetary investment into research and development of the Technology, at little to no cost to those competitors. They could then crowd Swarmify out of the market and significantly damage it financially, given that the Technology comprises Swarmify's primary product in the market.

**K.     Exhibit 19**

57. This exhibit contains detailed descriptions of Swarmify's Technology and its core trade secret information. It includes excerpts from one of Cloudflare's offending blog posts that improperly discloses Swarmify's Technology, and which Swarmify seeks to have removed from public view by way of its Motion for Preliminary Injunction. It also includes portions of a slide presentation that describes Swarmify's Technology and the application and implementation of that Technology in detail, and which comprises a significant part of Swarmify's trade secrets.

58. This information should remain under seal because, if public, Swarmify's competitors would have access to Swarmify's sensitive trade secrets and could replicate Swarmify's confidential and proprietary processes. Those competitors would enjoy the benefits of Swarmify's innovation, and of its significant time and monetary investment into research and development of the Technology, at little to no cost to those competitors. They could then crowd Swarmify out of the market and significantly damage it financially,

given that the Technology comprises Swarmify's primary product in the market.

### L.     Exhibit 20

59. This is an email from Swarmify's CEO that contains detailed descriptions of the methods underlying Swarmify's Technology and its core trade secrets, including specific techniques that Swarmify uses unique to its proprietary video streaming method. These descriptions, alone or when aggregated with other non-public material, could lead a competitor to potentially derive Swarmify's trade secrets..

60. This information relating to Swarmify's Technology should be redacted and remain under seal because, if public, Swarmify's competitors would have access to Swarmify's sensitive trade secrets and could replicate Swarmify's confidential and proprietary processes. Those competitors would enjoy the benefits of Swarmify's innovation, and of its significant time and monetary investment into research and development of the Technology, at little to no cost to those competitors. They could then crowd Swarmify out of the market and significantly damage it financially, given that the Technology comprises Swarmify's primary product in the market.

61. Even though portions of the above material may, standing alone, potentially be public information, the aggregation of that information constitutes a portion of Swarmify's trade secrets, and therefore the public disclosure of all this information aggregated together as in the Response would disclose significant aspects of Swarmify's trade secrets.

### M.     Exhibit 34

62. The deposition excerpts of Swarmify's CEO included by Cloudflare contain throughout detailed descriptions of both Swarmify's Technology and its confidential Acquisition Information.

63. The excerpts go into great detail of Swarmify's methodology for developing implementing, and using its Technology, as well as Cloudflare's use of that same Technology.

64. The excerpts also detail Acquisition Information, including non-public internal financial and personnel information about Swarmify that were or could be used in acquisition or licensing negotiations. They also include confidential information about Swarmify's potential investors and its customers, which could be used to its detriment by its competitors.

65. The information relating to Swarmify's Technology should be redacted and remain under seal because, if public, Swarmify's competitors would have access to Swarmify's sensitive trade secrets and could replicate Swarmify's confidential and proprietary processes. Those competitors would enjoy the benefits of Swarmify's innovation, and of its significant time and monetary investment into research and development of the Technology, at little to no cost to those competitors. They could then crowd Swarmify out of the market and significantly damage it financially, given that the Technology comprises Swarmify's primary product in the market.

66. Even though portions of the above material may, standing alone, potentially be public information, the aggregation of that information constitutes a portion of Swarmify's trade secrets, and therefore the public disclosure of all this information aggregated together as in the Response would disclose significant aspects of Swarmify's trade secrets.

67. Disclosure of the above confidential Acquisition Information to the public would harm Swarmify because it could then be obtained by other potential acquirers and thus would greatly impact Swarmify's ability to gain maximum value out of a possible future acquisition or licensing transaction.

[SIGNATURE ON FOLLOWING PAGE]

DECLARATION OF NATHAN BARNETT IN SUPPORT OF
CLOUDFLARE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL                                   15

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of January, 2018, in Melbourne, Florida.

Respectfully submitted,

_____

Nathan Barnett

## CERTIFICATE OF SERVICE

Pursuant to Civil Local Rule 5-5, I hereby certify that on the 22d day of January, 2018, the foregoing document was served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

Dated: January 22, 2018   Respectfully submitted,

SKIERMONT DERBY LLP

By: */s/ Sarah E. Spires*

Sarah E. Spires

Attorney for Swarmify, Inc.