1    SARAH E. SPIRES (SBN 252917)      MIEKE K. MALMBERG (SBN 209992)
sspires@skiermontderby.com
2    PAUL J. SKIERMONT      mmalmberg@skiermontderby.com
(*pro hac vice*)      SKIERMONT DERBY LLP
3    pskiermont@skiermontderby.com      800 Wilshire Boulevard, Suite 1450
CHRISTOPHER HODGE
4    (*pro hac vice*)      Los Angeles, California 90017
chodge@skiermontderby.com      Telephone: (213) 788-4500
5    SKIERMONT DERBY LLP      Facsimile: (213) 788-4545
1601 Elm Street, Suite 4400
6    Dallas, Texas 75201
Telephone: (214) 978-6600
7    Facsimile: (214) 978-6601

*Attorneys for Plaintiff Swarmify, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| SWARMIFY, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>CLOUDFLARE, INC., a Delaware corporation,<br><br>    Defendants. | CASE NO. 3:17-cv-06957-WHA<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: February 15, 2018<br>Time: 8:00 a.m.<br>Place: Courtroom 12, 19th Floor<br>Judge: Hon. William H. Alsup<br><br>Action Filed: December 6, 2017<br>Trial Date: None Set |

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT AND AUTHORITIES ...................................................................................1

    A. Swarmify is Likely to Succeed on its Trade Secret and Breach of Contract Claims. ...... 1

    1. Cloudflare Misappropriated Swarmify's Trade Secrets and is Using Swarmify's Technology. ................................................................................................................... 1

        a) Cloudflare Misstates the Nature of Swarmify's Trade Secrets. ............................. 2
        b) Cloudflare Is Using and Disclosing Swarmify's Technology, not Cloudflare's Purported Independently-Developed Streaming Method. ....................................... 4
        c) Cloudflare's Actions are Consistent with Misappropriation of Swarmify's Technology. ............................................................................................................. 6

    2. Swarmify's Trade Secrets are not Generally Known. ...................................................... 8

        a) The Literature Cited by Cloudflare does not Reveal Swarmify's Technology. ....... 9
        b) The Third-Party Companies Cited by Cloudflare do not Use the Same Streaming Methodology as Swarmify and Cloudflare. ........................................... 11

    3. Swarmify has not Disclosed Trade Secrets Relating to its Technology. ...................... 12

    4. Swarmify Breached the NDA. ...................................................................................... 13

    B. Swarmify Will Suffer Irreparable Harm if Cloudflare Is Not Enjoined. ....................... 14

    C. The Balance of the Equities Favors Swarmify. .............................................................. 15

III. CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
  No. 5:15-cv-01370-EJD, 2018 U.S. Dist. LEXIS 7559 (N.D. Cal. Jan.2, 2018) .......................... 10

*Copart, Inc. v. Sparta Consulting, Inc.*,
  No. 2:14-CV-00046-KJM-CKD, 2017 U.S. Dist. LEXIS 158055 (E.D. Cal. Sept. 26, 2017) . 9-11

*Corp. Express Office Prods., Inc. v. Van Guelpen*,
  No. C 02-04588 WHA, 2002 U.S. Dist. LEXIS 27642 (N.D. Cal. Dec. 12, 2002) ...................... 14

*Eros Tours & Travel, Inc. v. Infinitywaves, LLC,*
  No. CV 14-5095 PA (PJWx), 2015 U.S. Dist. LEXIS 188258 (C.D. Cal. Feb. 9, 2015) ............. 14

*Memry Corp. v. Ky. Oil Tech., N.V.*,
  No. C-04-03843 RMW, 2007 U.S. Dist. LEXIS 73315, at *26 & n.7 (N.D. Cal. Sept. 2007) ... 6, 8

*MMCA Grp., Ltd v. Hewlett-Packard Co.*,
  No. C-06-7067 MMC, 2010 U.S. Dist. LEXIS 2197 (N.D. Cal. Jan. 12, 2010) ............................ 9

*Morton v. Rank Am., Inc.*,
  812 F. Supp. 1062 (C.D. Cal. 1993) ...................................................................................... 3-4

*Waymo LLC v. Uber Techs., Inc.*,
  No. C 17-00939 WHA, 2017 U.S. Dist. LEXIS 73843 (N.D. Cal. May 11, 2017) ...................... 15

*Waymo LLC v. Uber Techs., Inc.*,
  No. C 17-00939 WHA, 2017 U.S. Dist. LEXIS 182197 (N.D. Cal. Oct. 30, 2017) ...................... 9

**Statutes**

18 U.S.C. § 1839 ............................................................................................................................. 9

Cal. Civ. Code § 3426.1 ................................................................................................................... 9

**Other**

Restat. 3d *of Unfair Competition*, § 39 cmt. f *(1995)*………………………………………………….9

# I. INTRODUCTION

Cloudflare expects Swarmify, and this Court, to believe that it did not misappropriate Swarmify's trade secrets nor breach the parties' NDA[1]—despite the fact that Cloudflare had *no* video streaming solution of its own before learning Swarmify's trade secrets, and yet, (1) a month after breaking off talks with Swarmify, Cloudflare hired its first video engineer and began its own video product development, and (2) three months later, released its own streaming solution nearly identical to Swarmify's. Cloudflare's claim that it developed its streaming solution independently is not credible. And its claim that Swarmify's trade secrets were in the public domain prior to Cloudflare's misappropriation is likewise untrue—that assertion requires cobbling together piecemeal portions of streaming technology, which may work for a patent case, but not for a trade secret case. Likewise, the companies that supposedly have disclosed Swarmify's methodology have done no such thing—those companies either use different technology, or they have not made generally known the methods Swarmify uses. And, irrespective of whether Swarmify's information constitutes trade secrets, Cloudflare's use and disclosure of that information breaches the NDA. For the reasons set forth below and in Swarmify's Motion for Preliminary Injunction ("Motion") [ECF 19-20], because Cloudflare is unquestionably using Swarmify's trade secrets in breach of the parties' NDA, and because Swarmify continues to suffer irreparable harm from that misuse, a preliminary injunction is necessary.

# II. ARGUMENT AND AUTHORITIES

## A. Swarmify is Likely to Succeed on its Trade Secret and Breach of Contract Claims.

### 1. Cloudflare Misappropriated Swarmify's Trade Secrets and is Using Swarmify's Technology.

---

[1] For brevity, any acronyms or capitalized terms not defined in this Response will carry the same definition as in Swarmify's Motion.

a) <u>Cloudflare Misstates the Nature of Swarmify's Trade Secrets.</u>

Realizing that its defenses can only succeed if it obfuscates and oversimplifies the nature of Swarmify's trade secrets, Cloudflare tries to cast those trade secrets as simply ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████. To be sure, that methodology is an aspect of Swarmify's trade secrets, but Cloudflare casts Swarmify's intellectual property too narrowly and stubbornly ignores key characteristics of Swarmify's Technology and trade secrets.

Importantly, Swarmify's Technology, and its related Confidential Information that together make up its trade secrets, ███████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████

1 ▮

2 ▮

3 ▮

4 ▮ Moreover, the implementation of the Technology, including the above functionality, was a part of Swarmify's trade secrets. And so was the simple fact that Swarmify's particular methodology worked—that it could be implemented and made to be commercially viable—while other methodologies it had attempted were not effective. *See Morton v. Rank Am., Inc.*, 812 F. Supp. 1062, 1073 (C.D. Cal. 1993) ("Certain 'negative' research may also result in the creation of protectable information.").

Cloudflare mischaracterizes Swarmify's Technology as ▮

▮

---

[2] The exhibits to Mr. Barnett's Supplemental Declaration continue numbering consecutively following the last exhibit to Mr. Barnett's original Declaration.

and its claims that Swarmify's Technology was therefore "less interesting" or "not a good fit," *see id.* ¶¶ 16, 21—are specious and do nothing more than muddy the waters.

b) <u>Cloudflare Is Using and Disclosing Swarmify's Technology, not Cloudflare's Purported Independently-Developed Streaming Method.</u>

Cloudflare claims to have independently developed the Technology that Swarmify uses, and it touts the Invention Disclosure Form ("IDF") submitted by Dane Knecht as purported proof. *See* Knecht Decl. Ex. 1. But the IDF proves nothing of the sort. The methodology disclosed in the IDF is not the video streaming solution used by Swarmify, nor that disclosed by Cloudflare in its blog posts.

[redacted]

1 ██████████████████████████████████████
2 ██████████████████████████████████████
3 ███████████████████████████████ Notably, Mr. Knecht's Declaration also
4 conspicuously omits any statements tying the IDF to Swarmify's and Cloudflare's
5 streaming methods other than to note he documented his thoughts on ███████
6 ██████████████████████████████████████
7 ███████ *See* Knecht Decl. at 13.³ Moreover, any claim that the IDF is the basis for
8 Cloudflare's streaming product fails the common sense test. If the IDF were the basis
9 for Cloudflare's product, there would have been no reason to enter into discussions
10 with Swarmify in 2016 in an effort to work towards a video streaming solution. And
11 Cloudflare would not have taken until fall of 2017 to bring forth a marketable product.
12   Rather, as it sets out in its blog posts, Cloudflare uses ████████████
13 ██████████████████████████████████████
14 ██████████████████████████████████████
15 ██████████████████████████████████████
16 ██████████████████████████████████████
17 ██████████████████████████████████████
18 ██████████████████████████████████████
19 ██████████████████████████████████████
20 ██████████████████████████████████████
21 ██████████████████████████████████████
22 ██████████████████████████████████████
23 ████████████████████████████

---

³ Mr. Knecht was conveniently unavailable to be deposed regarding the assertions in his Declaration as a part of these preliminary injunction proceedings. Swarmify could only depose Nitin Rao, who frequently testified that Mr. Knecht would be more knowledgeable than he on the technical details of Cloudflare's streaming service. *See* Rao Dep. at 22:12-15, 25:21-26:1, 27:10-14, 29:5-13, 66:24-67:1, 83:14-21; Spires Decl., Ex. C (noting Mr. Knecht's unavailability due to being in Oman).

It is clear, then, that not only is Cloudflare using Swarmify's Technology in its streaming solution, but also that it is not the same methodology Cloudflare purports to have already documented in the IDF. It is also evident that Cloudflare used Swarmify's analysis of the commercial viability and market application of its streaming method, including the knowledge that it is, in fact, commercially viable, in deciding to implement its streaming solution—an aspect of misappropriation that Cloudflare ignores in its Response.

### c) Cloudflare's Actions are Consistent with Misappropriation of Swarmify's Technology.

A finder of fact can infer trade secret misappropriation from circumstantial evidence, including access to the trade secret coupled with substantial similarity in the ensuing products. *See Memry Corp. v. Ky. Oil Tech., N.V.*, No. C-04-03843 RMW, 2007 U.S. Dist. LEXIS 73315, at *26 & n.7 (N.D. Cal. Sept. 20, 2007) (holding that circumstantial evidence, including access and similarity, could indicate misappropriation). Given Cloudflare's access and the substantial similarity of its streaming solution to Swarmify's, the timeline here provides ample grounds to conclude that Cloudflare misappropriated Swarmify's Technology:

- Cloudflare did not have a video streaming solution it could implement prior to beginning talks with Swarmify in 2016. Barnett Decl. ¶17; *see also* Decl. of Nitin Rao in Supp. of Cloudflare's Resp. ("Rao Decl.") ¶ 19.
- Cloudflare sought confidential information from Swarmify about its Technology in 2016, and Swarmify provided that information pursuant to the NDA, including the details of its Technology, its nonpublished patent application, and its analysis of the Technology's commercial viability and market application. Barnett Decl. ¶¶ 19-20 & Ex. B; Rao Dep. at 15:1-16:25.
- Cloudflare sought, and Swarmify provided, additional confidential information about the Technology pursuant to the NDA during the parties' talks in 2017, including updated information about Swarmify's patent application. Barnett

Decl. ¶¶ 19, 21 & Ex. C; Barnett Suppl. Decl. Ex. M. This means one or both of two things: either (1) Cloudflare is not being truthful in its assertion that it was ███████████████████████████████████████████████████████████████ ████████████████████████████, *see* Knecht Decl. ¶ 22; Rao Dep. at 94:5-15, or (2) Cloudflare wanted to take advantage of the discussions to gain as much access to Swarmify's Technology and Confidential Information as it could in order to implement it for itself.

- Cloudflare broke off talks with Swarmify in June 2017. Knecht Decl. ¶ 23.
- *One month later*, in July 2017, Cloudflare hired its first video engineer and "began formal development of its video product." Rao Decl. ¶ 19. According to Cloudflare's Head of Infrastructure, ███████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  █████████████████████████████████████████
  ████████████████████████████████████████
  ██████████████████████████████████
       █████████████████████████████████████
       ████████████████████████████████
       ███████████████████████████████
       █████████████████████████████████
       ██████████████████████████
       ██████████████
- Three months later, Cloudflare suddenly released its own video streaming solution on the market—a solution which, as described above, looks almost exactly like Swarmify's. Rao Decl. ¶ 20; Barnett Decl. Exs. J, K.

Both Dane Knecht and Nitin Rao were involved in the development of Cloudflare's streaming solution, with Dane Knecht overseeing Cloudflare's video efforts. Knecht Decl. ¶ 24; Rao Dep. 6:7-9:14, 29:9-13, 55:22-56:1, 64:21-65:18. And,

not coincidentally, Dane Knecht and Nitin Rao were Swarmify's primary contacts during its negotiations with Cloudflare, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████; Barnett Suppl. Decl. ¶ 6; *see also* Barnett Decl. Exs. B, C, D (transmitting Swarmify's confidential information to Messrs. Knecht and Rao). Once Messrs. Knecht and Rao saw Swarmify's trade secrets, including its Technology, its market application, and the simple fact that its methodology worked, they could not unlearn that. Cloudflare's claim that its employees did not then use Swarmify's trade secrets to implement Cloudflare's video streaming product is simply not believable.[4]

## 2. Swarmify's Trade Secrets are not Generally Known.

Despite Cloudflare's attempts to make it one, this is not a patent case—it is a trade secrets case. Therefore, Cloudflare's assertions that somebody "skilled in the art" could pull together the reams of publicly-available information on video streaming and naturally come up with the methods used in Swarmify's Technology are

---

[4] Similarly, Cloudflare's self-serving assertion that it tried to put this matter to rest, but Swarmify needlessly pushed forward with this lawsuit, is not believable. Swarmify's CEO wrote to Cloudflare's in-house counsel on October 3, 2017, pointing out the offending blog posts. Decl. of Samuel S. Coates in Supp. of Cloudflare's Resp. ("Coates Decl."), Ex. 19. Cloudflare's in-house counsel responded on October 6, 2017 saying he would look into the matter. *Id.*, Ex. 20. Having heard nothing from Cloudflare, Swarmify's intellectual property counsel sent Cloudflare a demand letter on October 19, 2017, a fact that Cloudflare omits from its timeline. Barnett Suppl. Decl. Ex. N. Again, having received no response, Swarmify engaged the undersigned, who filed suit on December 6, 2017. [ECF No. 1.] Apparently surprised that its non-responsiveness might cause Swarmify to move to protect its intellectual property rights, Cloudflare purported to offer evidence "that definitively demonstrates" Cloudflare did not misappropriate Swarmify's secrets. Coates Decl., Ex. 22. Swarmify asked Cloudflare to agree to a protective order or confidentiality agreement so it could review any such documentation, and Cloudflare's in-house counsel indicated he would send one for review. Coates Decl. Ex. 23. Having received no such agreement and no such documentation from Cloudflare, and seeking to protect its rights from further delay by Cloudflare, Swarmify filed the instant Motion on December 22, 2017.

unavailing and irrelevant. *See, e.g.*, Response at 22; Decl. of Dr. Michael Zink in Supp. of Cloudflare's Resp. ("Zink Decl.") at 10. Obviousness is not a defense to trade secret misappropriation. The requirement is simply that (1) the secrets are protected by the holder, and (2) the holder derives value from them not being generally known or readily ascertainable by proper means. *See* 18 U.S.C. § 1839(3); *see also* Cal. Civ. Code § 3426.1(d); *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 U.S. Dist. LEXIS 182197, at *9 (N.D. Cal. Oct. 30, 2017). Furthermore, it does not matter whether a person skilled in the art *could* pull together the information in the publications cited by Cloudflare in its Response, because Cloudflare has provided no evidence that a person skilled in the art, and specifically that anyone from Cloudflare, *did* pull together that information to develop the same Technology used by Swarmify and misappropriated by Cloudflare. *See* Restat. 3d of Unfair Competition, § 39 cmt. f (1995) ("[T]he theoretical possibility of reconstructing the secret from published materials containing scattered references to portions of the information or of extracting it from public materials unlikely to come to the attention of the appropriator will not preclude relief against the wrongful conduct . . . ."); *MMCA Grp., Ltd v. Hewlett-Packard Co.*, No. C-06-7067 MMC, 2010 U.S. Dist. LEXIS 2197, at *13 (N.D. Cal. Jan. 12, 2010) (quoting comment f with approval). It is a basic tenet of trade secret law that compilations or aggregations of public information are protectable as trade secrets. *Copart, Inc. v. Sparta Consulting, Inc.*, No. 2:14-CV-00046-KJM-CKD, 2017 U.S. Dist. LEXIS 158055 at *47 (E.D. Cal. Sept. 26, 2017) (citing *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal. App. 4th 26, 47 (2014)).

   a) <u>The Literature Cited by Cloudflare does not Reveal Swarmify's Technology.</u>

Cloudflare purports to offer several publications that supposedly have put the basis for Swarmify's technology in the public domain. *See* Zink Decl. Exs. 28-33. But, while generally applicable to video streaming, none of these articles directly speaks to Swarmify's technology. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

1 ■■■
2 ■■■
3 ■■■
4 ■■■
5 ■■
6 Not one of Cloudflare's exhibits discusses ■■■
7 ■■
8 ■■ And, notably, Cloudflare does not actually claim that any of these publications directly reveals Swarmify's trade secrets.[5] Rather, Cloudflare simply breaks down the components of Swarmify's unique Technology and asserts that certain of those components are known, so Swarmify's Technology is public—an easy claim to make by someone who already has access to the Technology. This may be an acceptable defense in a patent case, but not in a trade secret misappropriation case. *BladeRoom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-cv-01370-EJD, 2018 U.S. Dist. LEXIS 7559, at *6 (N.D. Cal. Jan.2, 2018) (noting that, "[a]s to subject matter, novelty, in the patent law sense, is not required for a trade secret") (alterations and quotes omitted) (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476 (1974)).

In reality, the technologies discussed in Cloudflare's exhibits may be various building blocks of Swarmify's Technology. But Cloudflare has provided no evidence that anyone has pieced together this material in the same manner as Swarmify, or that, absent Swarmify's efforts and investment, such an implementation is plausible. Even in the worst case, Swarmify's Technology would comprise a compilation of publicly available information—which is *still protectable as a trade secret. See, e.g., Copart,*

---

[5] Cloudflare's expert admits as much when, referring to Exhibits 27-29, he states that "Although [these] papers discuss specific logic and algorithms, it would be clear to one of skill in the art that ■■■ ■■■" Zink Decl. ¶ 17. But Cloudflare has presented no evidence that, until Swarmify, anyone had done so in Swarmify's unique and proprietary manner.

2017 U.S. Dist. LEXIS 158055 at *47.  More importantly, none of these publications addresses ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮—both of which are Swarmify's trade secrets, and both of which Cloudflare has misappropriated.

### b) The Third-Party Companies Cited by Cloudflare do not Use the Same Streaming Methodology as Swarmify and Cloudflare.

Cloudflare also points to several companies it claims have publicly revealed the same Technology that Swarmify uses and that Cloudflare misappropriated. As with the above literature, however, these examples all miss the mark. Again, none of these examples speaks to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Moreover, even if these companies offer similar methods, Cloudflare has not provided evidence that how these companies do it—the implementation—is generally known. Streamroot, for example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ██████████████████████████████████████████████████
2 █████████████████████████████
3       █████████████████████████████████████
4 ██████████████████████████████████████████████████
5 ██████████████████████████████████████████████████
6 ██████████████████████████████████████████████████
7 ██████████████████████████████████████████████████
8 ██████████████████████████████████████████████████

████████ With that being the case, Cloudflare cannot credibly claim that it based its video streaming system on any disclosure by HolaCDN, or that HolaCDN revealed Swarmify's methodology that Cloudflare is now using.[7]

### 3. Swarmify has not Disclosed Trade Secrets Relating to its Technology.

Finally, Cloudflare tries to argue that Swarmify itself made its trade secrets generally known. This assertion also falls flat. Cloudflare points to statements by Swarmify's CEO in which he discusses generalities of Swarmify's streaming methods,

---

[6] Cloudflare's attempts to discredit Swarmify's CEO's knowledge of the video streaming industry is unnecessary and irrelevant. *See* Response at 20-23. It does not matter what Mr. Barnett knows about what "other people, companies, and researchers have done" in regard to video streaming—either the information regarding the Swarmify/Cloudflare streaming solution is generally available, or it is not. Mr. Barnett's knowledge has no bearing whatsoever on Cloudflare's inability to show that the entirety of Swarmify's trade secrets are generally available.

[7] There are also several inconsistencies in HolaCDN's documentation, as well as substantive differences between it and the Swarmify/Cloudflare methodology, that render it inapplicable to show that methodology is generally known. For example, HolaCDN requires use of special "fast start" servers on Hola's network, which would therefore be incompatable with Cloudflare's own CDN—in other words, it would only work on Hola's dedicated network, not on a generic CDN or group of CDNs like the Swarmify/Cloudflare method. *See, e.g.*, Ex. 35 at 9 ("HolaCDN uses its fast start servers to ensure that the video starts fast . . ."). Similarly, the server-side components required by HolaCDN do not appear to use standard HTTP reverse proxies and so would not function properly on a CDN like Cloudflare's. *See id.* at 5.

and to a demo on Swarmify's website that shows it streams from multiple CDNs. *See* Exs. 41-45. But the comments on which Cloudflare focuses make no mention, for example, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ hardly a revelation of the entirety of its proprietary Technology.

### 4. Swarmify Breached the NDA.

In focusing on the trade secret claim, Cloudflare ignores its behavior that underlies its misappropriation: the fact that it breached the NDA that Swarmify was counting on to keep its Technology secret in the first place. As discussed in Swarmify's Motion, Cloudflare's use of the Technology and other Confidential Information is a clear breach of the NDA. Motion at 21-22. Cloudflare has presented no evidence that it obtained its streaming solution from, or even saw, any of the sources in the public domain that supposedly speak to Swarmify's Technology, or that it developed its nearly-identical streaming solution from any source other than the information that Swarmify gave it under the NDA. Cloudflare does not, and as discussed above cannot, claim that it based its streaming solution on Mr. Knecht's IDF. *See supra* at 4-6. Rather, Cloudflare obtained Swarmify's Technology and Confidential Information, broke off talks, immediately hired a video engineer and began developing its "own" video streaming solution, and promptly rolled out that solution using Swarmify's Technology and Confidential Information as a basis. And the same Cloudflare employees with access to Swarmify's secrets are the ones responsible for Cloudflare's streaming video project. *See supra*, at 6-8. Therefore, even if the trade secret status of Swarmify's Technology and Confidential Information is in doubt, Cloudflare is still in breach of the NDA and Swarmify is still entitled to a preliminary injunction to stop the ongoing irreparable harm caused by that breach.

B. **Swarmify Will Suffer Irreparable Harm if Cloudflare Is Not Enjoined.**

As set forth in its Motion, Swarmify stands to suffer irreparable harm in the absence of a preliminary injunction. Disputing this, Cloudflare claims that money damages are sufficient to remedy Swarmify's injuries because Swarmify purportedly offered to be acquired by Cloudflare for ▇▇▇. Response at 24-25. This argument is disingenuous, at best. Cloudflare ignores that, first, this amount was preliminary and did not have approval yet by Swarmify's investors, and, second, that the ▇▇▇ amount was only a part of the purchase price. Swarmify's CEO expressly told Cloudflare that

> $738K is the price I had estimated would be necessary *to settle notes on our* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Barnett Decl. Ex. F (emphasis added). As clearly expressed to Cloudflare, Swarmify anticipated value from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—potentially a much larger sum than ▇▇▇▇ and an amount that, based on uncertain expectations of future business, is difficult to quantify.[8]

---

[8] Cloudflare also points to *Eros Tours & Travel, Inc. v. Infinitywaves, LLC* to argue that Swarmify cannot show irreparable injury. No. CV 14-5095 PA (PJWx), 2015 U.S. Dist. LEXIS 188258 (C.D. Cal. Feb. 9, 2015). But *Eros* does not stand for the proposition that loss of goodwill does not constitute irreparable harm; indeed, that would contradict established law, recognized by this Court, that loss of goodwill constitutes irreparable harm. *See Corp. Express Office Prods., Inc. v. Van Guelpen*, No. C 02-04588 WHA, 2002 U.S. Dist. LEXIS 27642, at *23 (N.D. Cal. Dec. 12, 2002). Rather, the court in *Eros* simply found that, under those circumstances and given the structure of the plaintiff's competitive market, "any potential losses in goodwill and market share are likely to be fleeting and recoverable in the form of money damages." *Eros Tours & Travel*, 2015 U.S. Dist. LEXIS 188258, at *8.

Moreover, as this Court recently held, when a defendant remains in possession of a plaintiff's trade secrets, as here, "[m]isuse of that treasure trove remains an ever-present danger wholly at his whim," and "the harm that [the plaintiff] is likely to suffer as a result of such misuse cannot be unwound after the fact, nor can it be adequately compensated for with monetary damages." *Waymo LLC v. Uber Techs., Inc.*, No. C 17-00939 WHA, 2017 U.S. Dist. LEXIS 73843, at *36-37 (N.D. Cal. May 11, 2017) (finding irreparable injury where "[i]t would likely be futile to attempt, after the fact, to estimate the monetary value of injury suffered from either the loss of [plaintiff's] competitive position in this nascent industry or the destruction of its trade secrets pertaining to the same."). Similarly, Cloudflare remains in possession of Swarmify's trade secrets, and therefore, even if it has not implemented all of them into its streaming solution, it stands ready and able to do so at any time. This would destroy Swarmify's chance of legitimately competing in the still-young video streaming industry.

### C. The Balance of the Equities Favors Swarmify.

In addition to the reasons set forth in Swarmify's Motion, further evidence tilts the balance of equities in favor of Swarmify. According to Cloudflare's Head of Infrastructure, ████████████████████████████████████████████████████ Rao Dep. at 71:21-72:22. Therefore, Cloudflare will not be significantly harmed by requiring it to remove its blog posts and cease its use of Swarmify's trade secrets pending resolution at trial.

### III. CONCLUSION

For the foregoing reasons, and the reasons stated in Swarmify's Motion for Preliminary Injunction, Swarmify respectfully requests that the Court grant Swarmify's Motion for Preliminary Injunction, that it enter the Proposed Preliminary Injunction filed with its Motion, and that it grant Swarmify such other and further relief to which it may be justly entitled.

| | | |
|---|---|---|
| Dated: January 25, 2018 | Respectfully submitted, | |
| SKIERMONT DERBY LLP | | |
| | By: */s/ Sarah E. Spires* | |
| | Sarah E. Spires | |
| | Attorney for Swarmify, Inc. | |

# CERTIFICATE OF SERVICE

Pursuant to Civil Local Rule 5-5, I hereby certify that on the 25th day of January, 2018, the foregoing document was served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

Dated:  January 25, 2018　　　　　　Respectfully submitted,

SKIERMONT DERBY LLP

　　　　　　　　　　　　　　　　　By: */s/ Sarah E. Spires*

　　　　　　　　　　　　　　　　　　　Sarah E. Spires

　　　　　　　　　　　　　　　　　　　Attorney for Swarmify, Inc.