UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP

SWARMIFY, INC.                        )
                                      )
                                      )
            Plaintiff,                )
                                      )
  vs.                                 ) No. C 17-6957 WHA
                                      )
CLOUDFLARE, INC.                      )
                                      ) San Francisco, California
            Defendant.                ) Thursday
                                      ) March 29, 2018
_____) 8:00 a.m.


**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**        SKIERMONT DERBY, LLP
                          1601 Elm Street
                          Suite 4400
                          Dallas, Texas 75201
                     BY:  **CHRISTOPHER MICHAEL HODGE, ESQ.**


**For Defendant:**        CHARHON CALLAHAN ROBSON AND GARZA, PLLC
                          3333 Lee Parkway
                          Suite 460
                          Dallas, Texas 75219
                     BY:  **ANTHONY MATTHEW GARZA, ESQ.**


                          POLSINELLI, LLP
                          1661 Page Mill Road
                          Palo Alto, California 94304
                     BY:  **TERI H.P. NGUYEN, ESQ.**


*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                 *Official Reporter - US District Court*
                 *Computerized Transcription By Eclipse*

<u>**Thursday - March 29, 2018**</u>                              <u>**7:59 a.m.**</u>

**P R O C E E D I N G S**

---oOo---

         **THE CLERK:**  Civil Action 17-5967 Swarmify, Inc.

Versus CloudFlare, Inc.

     Counsel, please approach the podium and state your

appearances for the record.

              **MR. HODGE:**  Chris Hodge for Swarmify, your Honor.

              **MR. GARZA:**  Anthony Garza for CloudFlare.  With me

also is Teri Nguyen with the Polsinelli firm.

         **THE COURT:**  All right.  So this is a Motion to

Dismiss.  Are you the youngest lawyer on the team?

         **MR. GARZA:**  I am the youngest lawyer on the team and

second youngest in our firm.  We're a small firm out of Dallas.

         **THE COURT:**  Go ahead.

         **MR. GARZA:**  Your Honor, most of our motion is about

whether Swarmify can plead around CUTSA.  The case law

interpreting CUTSA say on that claim to have the same nucleus

of operative facts fall.

     I'd like to start with fraudulent inducement.  Based on

the allegations of the complaint, Swarmify argues that our

misrepresentation led to the acquisition of confidential

information.  That qualifies as misappropriation by improper

means under the statute and as a result, it falls under CUTSA.

     The *SHK Management* case out of the Central District made

1   the same finding.

2       With unjust enrichment the allegations in the complaint,

3   again Paragraph 73, base the claim on CloudFlare's use of

4   confidential information and trade secret information, falls

5   under a long line of case law, including the *R Tech Group* case.

6       Now, unfair competition under 17200, that becomes a fact

7   specific issue, that we need to look at the complaint and

8   determine what the basis for the 17200 claim is.  And here it's

9   shown at Paragraphs 88 and 89 of the complaint and the claim is

10  based on the inducing, the misrepresentations and on the misuse

11  of confidential information.

12      Just like the *Sun Power* case out of San Jose, that claim

13  also falls based on super session.

14      The two main arguments that we saw in response is that,

15  first, the information we're talking about here isn't quite a

16  trade secret and, thus, doesn't fall under CUTSA super session.

17  That argument has been found not to carry the day in the *Sun*

18  *Power* case by Judge Koh and she based that off of the *Silvaco*

19  case out of the appellate courts here in California.

20      The second argument we saw was that NDAs create a new

21  basis for property rights that can be used to beat CUTSA's

22  super session.  The first NDAs aren't qualitatively different,

23  and that's the question:  Is there a qualitatively different

24  basis of law that this information is based off of?

25      If NDAs were enough to beat CUTSA super session and allow

1  a bevy of tort claims outside of the statute, it would blow a

2  hole in the super session doctrine as it is right now.

3      So District Courts haven't expressly addressed the

4  question as framed by Swarmify as to whether contracts create

5  this new basis of positive law, but they have implicitly

6  addressed these questions by addressing tortious interference

7  with contract claims.

8      So there are two cases, one out of the state courts and

9  one in the federal courts, where the question was:  Does CUTSA

10  supersede tortious interference with an NDA, with an NDA

11  creating confidentiality obligations?  In both of those cases,

12  CUTSA super session applied and they said even though they are

13  talking about tortious interference with contract, that's not

14  enough to save you.  The two cases are the *KC Multi media* case

15  out of the Sixth District and the *Mattel* case out of the

16  Central District, David O. Carter.

17      There are also other cases that have applied CUTSA super

18  session in the context of NDAs, where there were NDAs at play.

19  And that's, again, the *Sun Power* case and the *R Tech Group* case

20  both out of the Northern District.

21      So two more claims to go.  First is the claim for any

22  accounting.  That's not a cause of action and that was not

23  addressed by Swarmify in its response, so we respectfully

24  request that you dismiss it.

25      Good faith fair dealing is a little more complicated.  As

1    pleaded, if you look at the complaint, again Paragraphs 70 and

2    71, the paragraphs really mimic the fraudulent inducement claim

3    and the misuse of confidential information claim.

4         CloudFlare breached the implied covenant by, among other

5    things, inducing Swarmify to provide its trade secrets.

6    CloudFlare's use of that information for itself kept Swarmify

7    from reaping the full benefits of that information.

8         Again, this is a recasting of the fraudulent inducement

9    claim, the misrepresentation -- the misuse claim, which means

10   it still falls under CUTSA preemption.

11        To the extent this is really intended to be a contract

12   style claim, where it is a term that was kind of in the

13   contract but not really in there and CloudFlare didn't comply

14   with it, it's not pleaded that way.  And unless there are

15   pleadings that show that there is some extra piece here to the

16   contract claim, it falls as duplicative.

17        So those are our CUTSA arguments.

18        **THE COURT:**  Let me ask you a question on the NDA.

19   Your motion -- first of all, is there a claim in the case, just

20   a flat out breach of contract claim, for breach of the NDA?

21        **MR. GARZA:**  Yes, your Honor.

22        **THE COURT:**  Does your motion attack that claim?

23        **MR. GARZA:**  No, your Honor.

24        **THE COURT:**  Okay.  That's what I thought.

25        All right.  Let's hear from the other side.  Go ahead.

1    **MR. HODGE:**  Your Honor, I want to start off with

2    Mr. Garza's last point on the -- the claim for breach of the

3    implied covenant of good faith and fair dealing, which, as

4    we've cited to in our brief, several Courts have said is a

5    contract claim.  It creates an implied term in the contract, in

6    this case the NDA, and, therefore, as a contractual claim.

7        **THE COURT:**  But that -- you know, I don't know why you

8    lawyers don't go look to see what I've ruled on this.  For 19

9    years I have been ruling that that is not a stand-alone claim.

10   It's just part of every contract claim.

11       You have a contract claim and you will be allowed to argue

12   to the jury that there is a covenant of good faith and fair

13   dealing read into every contract, but it's still a breach of

14   contract claim.  It's not a separate claim.

15       Did you read any of my orders that I've ever written that

16   I've spent so much time trying to tell people what the -- tell

17   you lawyers what the California law is?

18       **MR. HODGE:**  I -- I --

19       **THE COURT:**  No, you did not.  So I know that.  You

20   cannot plead it as a separate stand-alone claim.

21       Now, sometimes lawyers in your position use this as a

22   gimmick because what you're really trying to do is create a

23   tort so you get punitive damages.  No.  No.  N-O, no.  You

24   don't get to do that.

25       And there is only two circumstances where you can do that:

1   Insurance and banking.  Beyond that, in an ordinary commercial

2   context like this N-O, no.  There is no tort.  So it's strictly

3   a contract claim all day long and it's just part of the normal

4   contract claim.

5       I'm not going to hear any more argument on that point,

6   please.  All right.  Go to your negotiation point.

7       **MR. HODGE:**  Understand, your Honor.  On the CUTSA

8   preemption point your Honor, this Court obviously has several

9   decisions on that point, which counsel has read and cited to --

10       **THE COURT:**  I want you to know, I don't think *Silvaco*

11   is correctly decided, but it's the law in California and I have

12   to follow it.  So you're stuck with that.

13       **MR. HODGE:**  I understand that, your Honor.  And

14   *Silvaco* does say --

15       **THE COURT:**  *Silvaco*, I think it is.

16       **MR. HODGE:**  *Silvaco*, sorry.  ...does say that when

17   there is an independent basis for your common law claims, a

18   part -- irrespective of whether or not it's a trade secret,

19   then CUTSA does not preempt.

20       **THE COURT:**  Well, that's -- that's where your contract

21   claim comes in, your NDA claim that -- but they are not trying

22   to knock that out.  So -- so you got that, I guess.

23       **MR. HODGE:**  Okay.  Right.  And then the common law

24   claims, your Honor, are premised on the ownership of this

25   information by virtue of the NDA.  The NDA, or rather the

1    contract law of the State of California, is what creates an

2    independent property right in this information, apart from

3    whatever trade secret laws might protect this information.

4         And under *Silvaco* and its progeny --

5              **THE COURT:**  Okay.  I see your point, but is there a

6    decision -- what's your best decision that says *Silvaco* does

7    not apply where you have an NDA which creates a property right

8    in proprietary information?

9              **MR. HODGE:**  I think the best case, your Honor, is

10   actually -- it's a California Court of Appeals decision from

11   2013.  It's *Angelica Textile Services*.

12             **THE COURT:**  Angelica what?

13             **MR. HODGE:**  Textile Services.

14             **THE COURT:**  Did you cite that in your brief?

15             **MR. HODGE:**  It's quoted in a Ninth Circuit unpublished

16   case that we cited.

17             **THE COURT:**  Wait.  You cited an unpublished Ninth

18   Circuit decision that, in turn, cites *Angelica Textile*?

19             **MR. HODGE:**  Yes, your Honor.

20             **THE COURT:**  All right.  I'll take a look at it.

21   What's the cite to it?

22             **MR. HODGE:**  220 California -- Cal. App. 4th, 495.  And

23   the specific pages are 506 to 508, your Honor.

24             **THE COURT:**  506 to 508, okay.  So tell me what you

25   think that stands for.

1          MR. HODGE:  And it's not -- it's in the context of a

2    non-competition agreement, not a nondisclosure agreement, but

3    it still restricted the disclosure of protected information.

4          THE COURT:  Read the key part.

5          MR. HODGE:  I don't have the case in front of me.

6          THE COURT:  What is the point of the -- what is your

7    point that you think it stands for?

8          MR. HODGE:  Essentially that if there is a breach of

9    the contract that protects the information, then the common law

10   claims are not preempted by CUTSA because that -- that contract

11   breach creates an independent basis for those claims.

12         THE COURT:  Does Angelica expressly deal with *Silvaco*?

13         MR. HODGE:  It cites to *Silvaco* for the -- for the

14   statement of law, yes, your Honor.

15         THE COURT:  And then distinguishes it on the ground

16   that you mention?

17         MR. HODGE:  Yes, your Honor.

18         THE COURT:  All right.  Well, I'll take a look at it.

19         MR. HODGE:  If I may, your Honor.  *Silvaco* itself

20   found that the -- the defendant's independent violation of a

21   separate -- of an injunction actually, of an agreed injunction,

22   did not cause preemption under CUTSA.

23      So Silvaco itself recognizes that there can be independent

24   protection for information that takes it out of the reach of

25   CUTSA preemption.

1          THE COURT:  Okay.  Before we go on, let me ask the

2    other side.  Do you have anything to say on *Angelica Textile*?

3          MR. GARZA:  I have never heard of that case before

4    today, but I would ask that when I get a chance to read it, I

5    have an opportunity to kind of just submit something if I think

6    it's appropriate, one page.

7          THE COURT:  I don't know.  I might get an order out

8    today, so...

9          MR. GARZA:  Okay.

10          THE COURT:  I think you should have -- I don't know.

11    It was -- he says it was referred to in the decision that they

12    did cite.  All right.  So -- okay.

13      Go ahead.  What does plaintiff have to say next?

14          MR. GARZA:  So I can't respond in *Angelica Textile*.  I

15    haven't read that case.

16          THE COURT:  Okay.  Then let's go back to the

17    plaintiff's side.

18      Okay.  Swarmify gets to continue.  Please go ahead.

19          MR. HODGE:  Your Honor, I also want to point out one

20    of the arguments that CloudFlare made in its Motion to Dismiss,

21    in its briefing, was that the NDA itself precludes the good

22    faith and fair dealing claim -- excuse me.  We said we're not

23    going to talk about that, so I take that back.

24          THE COURT:  I don't want to hear about that.

25          MR. HODGE:  It precludes the fraudulent inducement

claim based on Paragraphs 11 and 22 of the -- of the

nondisclosure agreement, which it says -- basically takes it --

creates a merger agreement, a merger clause for all intents and

purposes.

However, Paragraph 11 -- Paragraph 11, your Honor, applies

fairly specifically to future business dealings. It doesn't

apply to the inducement to enter the NDA itself. It talks

about future business dealings. It talks about future --

future negotiations and acquisitions, not the NDA itself.

**THE COURT:** Let me ask a different question just about

the overall case for a minute. Have you taken any depositions

yet?

**MR. HODGE:** Both sides each took one brief deposition

for the preliminary injunction, your Honor.

**THE COURT:** All right. What did that show? In other

words, did you hit any gold mines there and find that they --

so I think you all ought to just go take some depositions and

get to the bottom of what happened here.

Let me ask the CloudFlare people. What is your story

going to be at trial?

**MR. GARZA:** Well, I think there are going to be a few

pieces to the story. I know one major piece to the story will

be whether this information is publicly available or not.

That's the part of the case that we worked up at the

preliminary injunction hearing. I'm fairly sure that's going

1    to survive to trial.

2         Our second part of the story will be how we came to build

3    our product.  So we'll be putting our engineers on the stand to

4    testify what our current product does and how we worked with

5    this third company to create this CloudFlare extreme product.

6         I do think the story will also talk about why we gave

7    employment offers to two of the people at Swarmify.  The

8    thought process when we were evaluating Swarmify, I guess

9    negotiations with us.  But all in all that we've not used their

10   confidential information; that we build great products and

11   we -- we've done nothing to breach the NDA or misuse trade

12   secrets.

13        **THE COURT:**  On the plaintiff's side, you ought to be

14   marching through their witnesses and seeing if that's true or

15   not.  Getting to the bottom of -- what if it turns out that

16   they have a convincing case on independent development?

17   That's -- you're dead, if they independently developed this

18   thing without using any of your alleged trade secrets.

19        So I think you ought to be trying to prove your case and

20   get in there and take depositions.

21        **MR. HODGE:**  One other --

22        **THE COURT:**  What we're doing is spinning our wheels

23   with theories, legal theories, and not getting at the facts.

24        All right.  I interrupted you, but go ahead and tell me

25   what else you want to say on this motion.

1        **MR. HODGE:**  I believe we've made our high points, your

2   Honor.

3        **THE COURT:**  All right.  Do you have a rebuttal?

4        **MR. GARZA:**  The only other point I'd suggest

5   addressing is their request to amend.  We don't think an

6   amendment is possible at this point.  We think there is -- they

7   either fall in one of two boxes.

8        Either the amendment would continue to rely on misuse of

9   confidential information and trade secrets, in which case the

10  amendment is futile.  If they are trying to expand the case

11  outside of confidential information and trade secrets, then

12  it's too late for that.  We've got trial in November and it's

13  not the time to expand the case any further.  So --

14       **THE COURT:**  You have a what in November?  A trial did

15  you say?

16       **MR. GARZA:**  I believe that's correct.

17       **THE COURT:**  All right.  Okay.  I didn't hear what you

18  said.  That sounds about right, trial in November.

19       **MR. GARZA:**  We do ask if you are inclined to consider

20  amendment, that you require them to show good cause at this

21  time.

22       **THE COURT:**  All right.  I'm going to give you until

23  noon tomorrow to send me an up to two-page letter brief on

24  *Angelica Textile*.  No replies.  But you've got to stick to just

25  that one case.  You can't go use it as some excuse to lard the

1　record with something else.

2　　　　　　**MR. GARZA:**　Yes, your Honor.

3　　　　　　**THE COURT:**　So you may address the *Angelica Textile*

4　case by noon tomorrow.　After that, I may get a decision out

5　tomorrow.

6　　　　　　**MR. HODGE:**　Is that for both sides, your Honor?

7　　　　　　**THE COURT:**　No, because you've already made your point

8　about it.　Come on.　He -- you didn't cite it in your brief.

9　　　　　　**MR. HODGE:**　I understand, your Honor.

10　　　　　　**THE COURT:**　You don't get a -- you can't use your own

11　failure to cite it as an excuse to -- no.　They get to give a

12　rebuttal to what you said.

13　　　All right.　Are we done for today?

14　　　　　　**MR. GARZA:**　From CloudFlare's perspective, yes, your

15　Honor.

16　　　　　　**THE COURT:**　Thank you.　You all have a good day and

17　safe journey back to Dallas.　Are you both from Dallas?

18　　　　　　**MR. HODGE:**　Yes, your Honor.

19　　　　　　**THE COURT:**　You came all the way out here from Dallas,

20　Texas?

21　　　　　　**MR. HODGE:**　It's nice out here, Judge.

22　　　　　　**MR. GARZA:**　Two Dallas attorneys telling you how CUTSA

23　works.

24　　　　　　**THE COURT:**　I must say that's -- that's a new one.

25　　　Listen.　Welcome to -- I hope you have time to do

1    something fun in this great city.  All right.  Thank you.

2         **MR. HODGE:**  Thank you, your Honor.

3         **MR. GARZA:**  Thank you.

4      (Proceedings adjourned.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF OFFICIAL REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Wednesday, April 25, 2018