SARAH E. SPIRES (SBN 252917)
sspires@skiermontderby.com
PAUL J. SKIERMONT
(*pro hac vice*)
pskiermont@skiermontderby.com
CHRISTOPHER HODGE
(*pro hac vice*)
chodge@skiermontderby.com
SKIERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, Texas 75201
Telephone:  (214) 978-6600
Facsimile:  (214) 978-6601

MIEKE K. MALMBERG (SBN 209992)
mmalmberg@skiermontderby.com
SKIERMONT DERBY LLP
800 Wilshire Boulevard, Suite 1450
Los Angeles, California 90017
Telephone:  (213) 788-4500
Facsimile:  (213) 788-4545

*Attorneys for Plaintiff Swarmify, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SWARMIFY, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CLOUDFLARE, INC., a Delaware corporation,<br><br>Defendants. | CASE NO. 3:17-cv-06957-WHA<br><br>**PLAINTIFF'S MOTION TO DISMISS WITHOUT PREJUDICE**<br><br>Date: August 2, 2018<br>Time: 8:00 a.m.<br>Place: Courtroom 12, 19th Floor<br>Judge: Hon. William Alsup<br><br>Action Filed:  December 6, 2017<br>Trial Date:  November 13, 2018 |

Pursuant to Federal Rule of Civil Procedure 41(a)(2), Plaintiff Swarmify, Inc. ("Swarmify") respectfully requests that the Court dismiss, without prejudice, its Complaint against Defendant Cloudflare, Inc. ("Cloudflare") [ECF 1]. Despite claiming in blog posts that it uses video streaming technology that appears to rely on misappropriated trade secrets, Cloudflare now—for the first time—has furnished Swarmify with information showing that █████████████████████████████████████████████████████████ Swarmify therefore seeks leave to dismiss its complaint, with leave to refile in the future should Cloudflare implement the video technology misappropriated from Swarmify.

### I. Relevant Background[1]

On September 27, 2017, Cloudflare published two blog posts introducing "Cloudflare Stream," a new video streaming product that Cloudflare purported to offer. (*See* blog posts attached as Exs. 1 & 2 to Declaration of Nathan Barnett ("Barnett Decl.")). As described more fully in Swarmify's Complaint and in its Motion for Preliminary Injunction [ECF 19], in the blog posts, Cloudflare claimed to be using portions of Swarmify's own confidential and proprietary video streaming technology that it had disclosed to Cloudflare during acquisition discussions. In particular, one of the blog posts made the following claims:

- "[E]arlier today we announced Cloudflare Stream, an end to end video solution designed to bring instant video to any device and network connection. Here's how Stream works to optimize video upload, encoding and delivery."
- "[T]his is how ████████████████████████████████████████████████████████████████████████…."
- "To be fast, ███████████████████████████████████████████████████

---

[1] The full background of this dispute is set forth in Swarmify's Motion for Preliminary Injunction [ECF 19], at 5:3-15:17.

PLAINTIFF'S ADMINISTRATIVE MOTION TO FURTHER SEAL                     1



"This allows us to offer a video solution that is at the best price …."

(Ex. 2 to Barnett Decl.). The blog posts thus indicated that Cloudflare had implemented Swarmify's technology for its own profit, in violation of the parties' non-disclosure agreement ("NDA") covering their discussions, and in violation of federal and state trade secrets laws.

Upon learning of the blog posts, Swarmify's CEO immediately emailed Cloudflare's in-house counsel, informing him that it appeared Cloudflare was using, and disclosing, Swarmify's proprietary technology, and that it was violating the parties' NDA. (10/3/17 email from Nathan Barnett to Sam Coates, attached as Ex. 3 to Barnett Decl.). Cloudflare's in-house counsel responded three days later, "Nathan I'll check it out but I'd be surprised if we did anything based on info from you guys. But I'll dig in and let you know." (10/6/17 email from Coates to Barnett, attached as Ex. 4 to Barnett Decl.).

More than two weeks after Swarmify first inquired, and despite this promise to investigate, Swarmify still had no response from Cloudflare. Therefore, on October 19, 2017, Swarmify's corporate counsel sent a letter to Cloudflare, again asking for an explanation of the blog posts, this time by October 25, 2017. (10/19/17 letter from

Charles Phipps to Coates, attached as Ex. 5 to Barnett Decl.). Cloudflare again failed to respond.

Therefore, in light of Cloudflare's refusal to respond and in an effort to protect its rights in its intellectual property, Swarmify filed this lawsuit on December 6, 2017. Later that day, Cloudflare's in-house attorney finally responded, informing Swarmify's litigation counsel that he had evidence there was no misappropriation of Swarmify's technology, and that he would provide Swarmify with that evidence by the end of the week. (Decl. of Sarah Spires ("Spires Decl.") ¶ 2). Swarmify's counsel noted that, while contrary to the documents she had seen, Cloudflare should certainly send over any such evidence, because Swarmify's counsel had (and still has) a Rule 11 obligation to refrain from bringing a frivolous suit, and Swarmify would drop the suit if the evidence showed that. (*Id.*). Cloudflare's counsel followed up by email on December 8, 2017, confirming that "[w]hen we spoke on the phone *you suggested that we share this with you for your review* under a protective order," and asked if Swarmify had an agreement in mind or preferred Cloudflare to send one. (12/8/17 email from Coates to Spires, included in Ex. 1 to Spires Decl.) (emphasis added). Swarmify's counsel responded that Cloudflare could send an agreement. (12/8/17 email from Spires to Coates, included in Ex. 1 to Spires Decl.).

More than a week after filing the Complaint and the parties' first call, and six days after Swarmify asked Cloudflare to provide an agreement, Cloudflare still had not responded, and so Swarmify finally served its Complaint on Cloudflare. (Spires Decl.¶ 5).  It was only then that Cloudflare contacted Swarmify's counsel again about sending over documents, saying, "I'll send over an agreement for your review." (12/14/17 email from Coates to Spires, included in Ex. 1 to Spires Decl.). Swarmify's counsel reiterated Swarmify's willingness to drop the case if Cloudflare actually had evidence it had not misappropriated Swarmify's technology: "This does not change my agreement to look at the documents that you say disprove our case. *If they do, we will of course not continue to pursue the case*." (12/15/17 email from Spires to Coates,

included in Ex. 1 to Spires Decl.) (emphasis added). And Swarmify's counsel suggested the parties simply sign on to the Northern District's model protective order so that Cloudflare could share those documents.[2]

Upon receiving no agreement from Cloudflare, nor any further effort to show Swarmify its purported evidence that it had not stolen Swarmify's technology, and having been strung along by Cloudflare for two-and-a-half months, Swarmify acted to protect itself and filed its Motion for Preliminary Injunction on December 22, 2017. (Spires Decl. ¶ 7).

Initial evidence in these proceedings continued to confirm, not refute, Swarmify's arguments that Cloudflare had misappropriated its technology. While an invention disclosure form submitted by Dane Knecht showed that Cloudflare had previously contemplated a portion of Swarmify's video-streaming technique— ███ ███—it did not come close to covering Swarmify's entire process. (*See* Swarmify's Discl. of Trade Secrets Pursuant to Cal. Civ. Code § 2019.210 [ECF 46-3], ¶ 1). Indeed, during the sole three-hour deposition that has taken place of any Cloudflare employee so far, Cloudflare's corporate representative appeared to confirm that Cloudflare was using Swarmify's technology. For example, he stated that Cloudflare's video product could ███ ███. (*See* 1/23/2018 Dep. of Nitin Rao ("Rao Dep."), attached as Ex. 2 to Spires Decl., 75:7-16, 76:15-77:1). And the timeline that Cloudflare's representatives described certainly showed it was likely Cloudflare had garnered these techniques from its discussions with Swarmify:

---

[2] Not only does the foregoing discussion show that Swarmify was diligent in inquiring as to whether Cloudflare had, in fact, misappropriated its trade secrets, but it also shows that Cloudflare's representations to the Court—claiming that Swarmify refused Cloudflare's offers of evidence refuting Swarmify's claims—were flat out falsehoods. *See, e.g.*, Def.'s Resp. to Pl.'s Mot. for Prelim. Inj. [ECF 42] at 15:26-16:18 ("Rather than take Cloudflare up on its offer to disclose Cloudflare's IDF, Swarmify proceeded to serve its lawsuit . . . .").

- April 2016: Cloudflare has no streaming solution it is able to implement. Cloudflare enters into negotiations with Swarmify. (Decl. of Nathan Barnett in Supp. of Swarmify's Mot. for Prelim. Inj. [ECF 19-8] ("Barnett PI Decl.") ¶ 17; Decl. of Nitin Rao in Supp. of Cloudflare's Opp. To Mot. for Prelim. Inj. [ECF 42-6] ("Rao PI Decl.") ¶ 19).

- April-May 2016: Cloudflare seeks confidential information from Swarmify about its video technology, and Swarmify provides that information to Dane Knecht and Nitin Rao pursuant to the NDA, including the details of its technology, its nonpublished patent application, and its analysis of the technology's commercial viability and market application. (Barnett PI Decl. ¶¶ 19-20; Ex. B to Barnett PI Decl. [ECF 19-10]; Rao Dep. at 14:24-15:12). Negotiations stall.

- May 2017: Negotiations re-open. Cloudflare seeks, and Swarmify provides to Dane Knecht and Nitin Rao, additional confidential information about Swarmify's technology pursuant to the NDA, including updated information about Swarmify's patent application. (Barnett PI Decl. ¶¶ 19, 21; Ex. C to Barnett PI Decl. [ECF 19-11]; Ex. M to Suppl. Decl. of Nathan Barnett in Supp. of Swarmify's Mot. for Prelim. Inj. [ECF 48-4]).

- June 2017: Cloudflare breaks off talks with Swarmify. (Decl. of Dane Knecht in Supp. of Cloudflare's Opp. To Mot. for Prelim. Inj. [ECF 42-1] ("Knecht PI Decl.") ¶ 19).

- July 2017: Cloudflare hires its first video engineer and, under the direction of Dane Knecht and Nitin Rao, begins formal development of its video streaming product. (Rao PI Decl. ¶ 19; Rao Dep. at 29:5-13, 92:11-23; Knecht PI Decl. ¶ 24).

- September 2017: Cloudflare releases Cloudflare Stream and authors blog posts showing it uses aspects of Swarmify's trade secrets.

Throughout the course of this litigation, Cloudflare has defended against Swarmify's accusations on two grounds: (1) that Swarmify's video streaming technology does not constitute a trade secret because parts of it are publicly available; and (2) that Swarmify's video streaming technology is not a trade secret, at least with respect to Cloudflare, because Cloudflare thought of it independently. (*See, e.g.*, Def.'s Resp. to Mot. for Prelim. Inj. [ECF 42] at 9:6-11:15, 12:1-15:15; Def.'s 1st Am. Answer [ECF 91] ¶109 ("Swarmify's claims are barred, in whole or in part, by Swarmify's failure to preserve the confidentiality of its alleged trade secrets and/or confidential information, by public knowledge of the alleged trade secrets and/or confidential information, or by Cloudflare's independent development of the alleged trade secrets and/or confidential information.")).

In May 2018—five months after filing of this lawsuit, and seven months since Swarmify first informed Cloudflare of its concern about the apparent misappropriation of Swarmify's technology, Cloudflare sprung a new defense on Swarmify—one which radically alters this case. ███████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

---

[3] Swarmify hesitates to raise the content of settlement discussions, and it attempts here to carefully limit the disclosure of such discussions only to those necessary. However, Rule 408 provides only that such discussions cannot be offered "to prove liability or disprove liability or to prove the value of a claim." *Therasense, Inc. v. Becton, Dickinson & Co.*, No. C 04-02123 WHA, 2008 U.S. Dist.



LEXIS 124780, at *27 (N.D. Cal. 2008); *see also* Fed. R. Evid. 408(b) (noting settlement discussions may be introduced for "another purpose"). Courts have used negotiation evidence for myriad other purposes. *See Sterling Sav. Bank v. Citadel Dev. Co.*, 656 F. Supp. 2d 1248, 1255-56 (D. Or. 2009) (collecting cases). This includes showing potential bad faith, showing possibility of Rule 11 sanctions, and claims of estoppel based on representations made during negotiations. *See, e.g., Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000); *Eisenberg v. University of New Mexico*, 936 F.2d 1131, 1134 (10th Cir. 1991); *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293-94 (2nd Cir. 1999).

1  ▮. Of course, had Cloudflare bothered to inform Swarmify of the above facts five
2  months ago, the parties could have saved themselves, and the Court, significant trouble
3  and expense. Swarmify therefore seeks to dismiss this suit without prejudice, so that if
4  ▮
5  ▮.

## II. Legal Standard for Voluntary Dismissal without Prejudice

Rule 41(a)(2) "allows a plaintiff, pursuant to an order of the court, and subject to any terms and conditions the court deems proper, to dismiss an action without prejudice at any time." *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996). "Where the request is to dismiss without prejudice, '[a] District Court should grant a motion for voluntary dismissal under Rule 41(a)(2) unless a defendant can show that it will suffer some plain legal prejudice as a result.'" *WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1058 n.6 (9th Cir. 2011) (quoting *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001)) (alterations in original).

"Legal prejudice" in this context means "prejudice to some legal interest, some legal claim, [or] some legal argument." *Smith*, 263 F.3d at 976 (quoting W*estlands*, 100 F.3d at 97 (9th Cir. 1996)). Legal prejudice "does not result simply when defendant faces the prospect of a second lawsuit or when plaintiff merely gains some tactical advantage." *Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143, 145 (9th Cir. 1982) (citations omitted).

A defendant cannot show plain legal prejudice simply because it will lose the ability to advance its defense, for example, by way of summary judgment. *See Creative Labs v. Orchid Tech.*, NO. C 93-3429 TEH, 1997 U.S. Dist. LEXIS 13911, at *6 (N.D. Cal. Sept. 12, 1997) ("While granting plaintiffs' request for voluntary dismissal would prevent the Court from ruling on defendants' motion, it would not preclude defendants from raising the same arguments and defenses in subsequent litigation. In fact, there is no readily apparent reason why defendants could not resubmit their summary judgment motion should plaintiffs refile this suit."); *Burgess v.*

*Vancouver Police Dep't*, No. C15-5844 BHS-DWC, 2016 U.S. Dist. LEXIS 117683, at *5-6 (W.D. Wash. Aug. 11, 2016) (collecting cases). Legal prejudice also does not result merely because a defendant has expended resources in preparation of the case, nor because there might be "uncertainty which would remain if the case were not litigated and the parties' contentions resolved." *See Westlands*, 100 F.3d at 97; *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, No. CV 03-5965 PSG (MANx), 2007 U.S. Dist. LEXIS 98687, at *8 (C.D. Cal. Sept. 26, 2007) ("Defendants only argue that they have spent resources in preparing for trial. However, the Ninth Circuit has made clear that Defendants' efforts in preparation for trial cannot qualify as plain legal prejudice that would factor against allowance of Revolution's voluntary dismissal."). Nor does the possibility of a later suit constitute legal prejudice. *Navellier v. Sletten*, 262 F.3d 923, 938 (9th Cir. 2001) (citing *Hamilton*, 679 F.2d at 145).

This Court has also noted that, in determining whether to dismiss with prejudice or without, courts consider "(1) the defendant's effort and expense in preparing for trial, (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the actions, and (3) insufficient explanation of the need to take a dismissal." *Carrillo v. Target Corp.*, No. C 17-05693 WHA, 2017 U.S. Dist. LEXIS 208688, at *6-7 (N.D. Cal. Dec. 19, 2017) (citation omitted). As discussed below, each of these factors weights in Swarmify's favor.

### III.    Argument

In light of Cloudflare's late revelation ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. *See Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1668 (2003) (holding that, "to prove misappropriation of a trade secret under the UTSA, a plaintiff must establish (among

other things) that the defendant improperly 'used' the plaintiff's trade secret," and affirming jury verdict that found defendant had access to trade secrets but "*did not use* one or more of the trade secrets in designing, manufacturing, or testing its own product") (emphasis in original); *see also, e.g.*, Pl.'s Compl. [ECF 1] ¶ 47 (alleging Cloudflare violated trade secrets law "by using improper means to acquire *and use*" Swarmify's secrets) (emphasis added). Swarmify, and its counsel, are ethically obligated to refrain from pursuing a cause of action that, as they only recently learned, does not appear to have a basis. *See* Fed. R. Civ. P. 11. They cannot, in good faith, continue to prosecute this action. ███████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████.

Cloudflare will suffer no legal prejudice from dismissal without prejudice. It has no counterclaims pending. At most, it can claim that it will be unable to further advance its legal arguments, and that it has spent time and money on defending this litigation and preparing its case. But these are insufficient to show prejudice. *See Westlands*, 100 F.3d at 97; *Revolution Eyewear, Inc.*, 2007 U.S. Dist. LEXIS 98687, at *8. Moreover, as described above, any expense Cloudflare has incurred has been its own fault, ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████.

The factors noted by this Court in *Carrillo* also dictate a dismissal without prejudice. *See* 2017 U.S. Dist. LEXIS 208688, at *6-7. Because of the early settlement attempts in this case, the parties have not expended significant effort and expense in preparing for trial—and, as noted, any such effort and expense could have been avoided by Cloudflare. The parties have each taken only one three-hour deposition each, of the other side's corporate representative, in advance of the preliminary injunction hearing in this suit. Swarmify has not delayed, nor lacked diligence, in prosecution of this case; moreover, upon learning that Cloudflare ████████████

██████████████████████████████████████, Swarmify promptly sought to end this case—first through settlement attempts, and now through this motion to dismiss. (*See, e.g.*, ECF 81, 108, 117, 121, 122, 125 (showing minute entries for court-supervised settlement discussions)).  And Swarmify has here thoroughly explained the need for dismissal, and it looks forward to doing so further at oral argument should that be necessary.

      Finally, a fee award is not an appropriate condition for dismissal of this case. While a court may condition dismissal on payment of a defendant's costs and fees—either on dismissal, or in the event that suit is refiled—"[i]mposition of costs and fees as a condition for dismissing without prejudice is not mandatory," and any attorney fee award may only be "for work which cannot be used in any future litigation of these claims" *Westlands*, 100 F.3d at 97. Where there is no bad faith on the part of the plaintiff in seeking dismissal, and where a close factual and legal question had been litigated, a fee award is particularly inappropriate. *See United States v. One 2008 Toyota Rav 4 Sports Util. Vehicle*, No. CV 09-5672 SVW (PJWx), 2010 U.S. Dist. LEXIS 150073, at *6-7 (C.D. Cal. July 16, 2010) (granting plaintiff's motion to dismiss without prejudice and holding fee award to defendant improper where "close factual and legal question" existed and there was no evidence of plaintiff's bad faith). Furthermore, any fees incurred by Cloudflare thus far are for work that could be used in in a future suit, if brought, and so a fee award is not warranted. *See Westlands*, 100 F.3d at 97; *Punay v. PNC Mortg.*, No. 16cv2780-WQH-NLS, 2018 U.S. Dist. LEXIS 76979, at *8 (S.D. Cal. May 7, 2018) ("Plaintiff has moved for voluntary dismissal at a relatively early stage in proceedings and it is likely that Defendant PNC would be able to use the legal work produced in this case in any subsequent litigation. The imposition of costs and fees as a condition to protect the interests of Defendant PNC upon dismissal without prejudice is not warranted in this case.")

      Moreover, Swarmify has not demonstrated any bad faith—rather, the case presents a "close factual and legal question" as to the misappropriation issue—or, it

did until Cloudflare's recent revelation. *See One 2008 Toyota Rav 4 Sports Util. Vehicle*, 2010 U.S. Dist. LEXIS 150073, at *6-7. If there is bad faith here, it is on Cloudflare's part. As the above facts demonstrate, any run-up in fees was *Cloudflare's own doing*, ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████. The Court should not reward this behavior with a fee award.

Instead, the Court can easily impose conditions apart from fee payment that will prevent Swarmify from abusing a dismissal without prejudice. For example, if Swarmify discovers that Cloudflare is later using its trade secrets and deems it necessary to re-file suit, the Court can require that any such suit be returned to this Court, in the same procedural posture. *See* Fed. R. Civ. P. 41(a)(2) (giving court discretion to impose conditions on a voluntary dismissal); *ACEquip Ltd. v. Am. Eng'g Corp.*, 219 F.R.D. 44, 46 (D. Conn. 2003) (granting motion to dismiss without costs while requiring any subsequent suit to be refiled in the same court because it "helps to ensure (1) that Defendant is not subjected to duplicative or unnecessary costs and (2) that the case, should it be reopened, proceeds in a timely manner"). Any such conditions will be more than adequate to provide whatever protections Cloudflare may be entitled to after wasting Swarmify's—and the Court's—time and money by its lack of forthrightness.

## IV.   Conclusion

Swarmify therefore respectfully requests that the Court dismiss this lawsuit without prejudice and without any award of costs or fees to Cloudflare.

| | |
|---|---|
| Dated:  June 14, 2018 | Respectfully submitted, |
| SKIERMONT DERBY LLP | By: */s/ Sarah E. Spires* |
| | Sarah E. Spires |
| | Attorney for Swarmify, Inc. |

## CERTIFICATE OF SERVICE

Pursuant to Civil Local Rule 5-5, I hereby certify that on the 14th day of June, 2018, the foregoing document was served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

Dated:  June 14, 2018                   Respectfully submitted,

SKIERMONT DERBY LLP

By: */s/ Sarah E. Spires*

Sarah E. Spires

Attorney for Swarmify, Inc.