Margaux A. Savee (SBN 244767)
  msavee@polsinelli.com
Teri H.P. Nguyen (SBN 267498)
  thpnguyen@polsinelli.com
**POLSINELLI LLP**
Three Embarcadero Center, Suite 2400
San Francisco, California 94111
Telephone:   415.248.2100
Facsimile:    415.248.2101

Brett Charhon (*Admitted Pro Hac Vice*)
  bcharhon@ccrglaw.com
Steven Callahan (*Admitted Pro Hac Vice*)
  scallahan@ccrglaw.com
Anthony M. Garza (*Admitted Pro Hac Vice*)
  agarza@ccrglaw.com
**CHARHON CALLAHAN ROBSON & GARZA, PLLC**
3333 Lee Parkway, Suite 460
Dallas, Texas 75219
Telephone:   214.521.6400
Facsimile:    214.764.8392

*Counsel for Defendant Cloudflare, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SWARMIFY, INC., a Delaware corporation, | CASE NO. 3:17-cv-06957-WHA |
| Plaintiff, | |
| v. | **DEFENDANT CLOUDFLARE, INC.'S MOTION FOR ATTORNEY'S FEES** |
| CLOUDFLARE, INC., a Delaware corporation, | Date:     September 13, 2018<br>Time:     8:00 a.m.<br>Ctrm.:    12 – 19th Floor<br>Judge:    Hon. William Alsup |
| Defendant. | |
| | REDACTED VERSION - FILED UNDER SEAL |

## I. INTRODUCTION

Swarmify claimed that it owned all implementations of the "secret" concept of dynamic, fast-to-cheap video switching. But the claimed "trade secret" was both (i) independently developed by Cloudflare months prior to Swarmify approaching Cloudflare and (ii) in the public domain from numerous sources, including academics and Swarmify's competitors (such as Hola CDN). Swarmify should not have brought this lawsuit—and, at a minimum, it should have sought dismissal of its claims after Cloudflare filed its Response to Swarmify's Motion for Preliminary Injunction, which demonstrated that the suit was meritless.

Cloudflare recognizes that a request for attorney's fees is extraordinary, and Cloudflare does not file such requests as a matter of routine. But here Swarmify intentionally and repeatedly turned a blind eye to the fundamental flaws in its case. Long after its inability to succeed on the merits was clear, Swarmify proceeded in bad faith to strategically position itself for potential settlement by limiting its own costs while imposing significant costs on Cloudflare. Swarmify did so by, among other things, (i) rushing to file a preliminary-injunction motion rather than taking Cloudflare up on its offer to produce the Invention Disclosure Form ("IDF") that proved Cloudflare had developed the technology-at-issue independently long before meeting with Swarmify; (ii) ignoring the evidence in Cloudflare's preliminary-injunction response; (iii) ignoring the Court's clear and repeated statements on the substance of Swarmify's claims; and (iv) ignoring the Court's directive that the parties engage in discovery in good faith on an expedited schedule to clarify the substance of the claims.

Following the Court's preliminary-injunction ruling, Swarmify made no realistic attempt to participate in discovery or support its own claims—instead, it held Cloudflare to extensive and expedited discovery, and attempted to amend its trade-secret claims in a way that had more to do with Cloudflare's defenses than Swarmify's own actions and purported intellectual property. Swarmify's unsuccessful attempt to shift its trade-secret definitions to specific implementations that might survive Cloudflare's defenses served only to prolong and complicate the lawsuit.

Ultimately, when it became clear that Cloudflare would not accede to its settlement demands and it would not prevail with its case, Swarmify sought dismissal *without* prejudice, which would have allowed it to refile this case on different "trade secrets," in a different venue, and unburdened

by this Court's rulings. Swarmify then changed course—but only after the Court advised that it would not allow dismissal without prejudice—and, on the eve of the close of discovery, sought dismissal *with* prejudice. By this point, Cloudflare had incurred approximately $380,000 in unnecessary attorney's fees and expenses.

Because Swarmify's trade-secret claims were objectively specious and pursued in bad faith, the Court would be justified in awarding Cloudflare all of its attorney's fees and expenses. With this motion, Cloudflare respectfully suggests that an award of attorney's fees from the date of the Court's preliminary-injunction ruling through the dismissal with prejudice is appropriate (amounting to $199,599.71), as Cloudflare's preliminary-injunction response and the Court's Order denying Swarmify's preliminary-injunction motion placed Swarmify, in no uncertain terms, on notice of the meritless nature of its case.

## II.     ARGUMENT

### A.     The Court May Award Attorney's Fees When A Plaintiff Maintains Misappropriation Claims In Bad Faith

The California Uniform Trade Secrets Act and the US Defend Trade Secrets Act allow the Court to award attorney's fees against a plaintiff who makes a misappropriation claim in bad faith. *See* Cal. Civ. Code § 3426.4; 18 U.S.C. § 1836(b)(3)(D). In determining whether a plaintiff made a claim in bad faith, courts consider (i) the objective speciousness of the claim and (ii) the plaintiff's subjective bad faith in bringing or maintaining the claim (e.g., whether the claim was made in bad faith or for an improper purpose). *See, e.g.*, *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir. 2016). The Court also has inherent authority to award attorney's fees. *See, e.g.*, *Tapgerine, LLC v. 50Mango, Inc.*, 16-CV-06504, 2017 WL 1956874, at *1 (N.D. Cal. May 11, 2017).

### B.     Swarmify Maintained Its Misappropriation Claims In Bad Faith

#### 1.     <u>Swarmify's Claims Were Objectively Specious And Swarmify Knew It</u>

Swarmify's claims were objectively specious because: (i) Cloudflare independently developed its dynamic-switching technology and (ii) Swarmify's broadly claimed "trade secret" was invalid. *See, e.g.*, *Integral Dev. Corp. v. Tolat*, 12-CV-06575, 2015 WL 674425, at *8 (N.D. Cal. Feb. 12, 2015) ("One way to show objective speciousness is by demonstrating that there was no misappropri-

ation[.]"). Further, Swarmify's shifting definitions of its "trade secrets" demonstrate that Swarmify subjectively understood that its claimed "secrets" were not valid.

*First*, Swarmify asserted that ████████████████████████████████████████████████████████████████████████████████████████████████████

See ECF No. 41-15, Coates Decl., Ex. 19. But Cloudflare had independently developed that idea (documented in IDF-85) *months prior* to Swarmify approaching Cloudflare, and independently developed Cloudflare Stream. See ECF No. 42-6, Rao Decl. ¶¶ 19-21; ECF No. 41-6, Knecht Decl. ¶¶ 3-13, 24-26.

Cloudflare's IDF-85 (filed as ECF No. 42-2) is titled "In order to provide faster video load [/] serve parts of video from different locations" and discloses "fast-to-cheap" switching as well as dynamic switching:

> In the case of video we could *serve first few seconds* (or lower quality seek video segments) *at every colo and rest of video from cheapest colos or ones with capacity.*
>
> When a video loads in a browsers use anycast initially to *load the video from the closest location* based on BGP or based on DNS redirection. *The web player can calculate* based on the speed and bit rate of video how much it needs to buffer to *ensure that the user can play without future buffering and pull from an alternate location that might have cheaper transit costs. The player would need to account for a user fast forwarding and then switching back to the fastest location.*

(emphases added); *see also* ECF No. 42-1, Knecht Decl. ¶¶ 3-13 (explaining IDF-85). Because Cloudflare independently developed its technology, Swarmify's claims were objectively specious.

*Second*, Swarmify's "technology" was publicly known and, as such, is not a trade secret. *See* ECF No. 41-4, Resp. to Mot. for Prel. Inj. at 5-8, 12-15 (demonstrating that Swarmify's purported technology was well known in the industry, publicly disclosed in academic papers and patents, used by Swarmify's competitor HolaCDN (and others), and had even been publicly disclosed by Swarmify itself). Because the claimed "secrets" were public, Swarmify's claims were objectively specious.

*Third*, at the preliminary-injunction hearing and afterwards, Swarmify tried to shift its trade-secret definition as suited its purpose. As recognized by the Court, Swarmify "toggled between

claiming broad, sweeping *concepts* about streaming in general to counter arguments that Cloudflare never used the supposed trade secrets and claiming narrow, specific *implementations* of a particular streaming method to dodge arguments that the supposed trade secrets do not qualify as such because they remain generally known in the field." See ECF No. 84-1, Order Denying Mot. for Prel. Inj. at 6 (emphases in original). Swarmify's refusal to nail down and claim a specific "secret" that was both misappropriated and not invalid demonstrates that Swarmify understood its claims were specious.

### 2. Swarmify Maintained Its Claims In Bad Faith

The evidence demonstrates that Swarmify maintained its misappropriation claims in bad faith.

*First*, Swarmify continued to pursue this lawsuit after Cloudflare disclosed, in its preliminary-injunction response, its independent development, industry public use of the "technology," and other invalidating art.[1] Instead of dismissing its claims after seeing Cloudflare's evidence, Swarmify began shifting its trade-secret definition in its preliminary-injunction reply and, at the hearing, attempted to dodge the invalidating art. When that failed to convince the Court, Swarmify went back to the drawing board and, *using information received from Cloudflare in the lawsuit*, attempted to improperly amend its trade-secret disclosure to assert approximately two dozen new "secrets" not contained in its original trade-secret disclosure and not identified by its CEO in deposition. *See* ECF No. 90, Amended Disclosure; ECF No. 100-12, Motion to Strike Swarmify's Trade Secret Disclosures at 7-8, 10-12. This was wholly improper—courts do not allow trade-secret plaintiffs to use a preliminary-injunction motion, depositions, and other discovery to preview a defendant's art and defenses before settling on a trade-secret definition.

*Second*, Swarmify pursued the lawsuit through nearly the end of discovery while ignoring unfavorable comments from the Court concerning Swarmify's litigation tactics:

- The Court found that Swarmify's original trade secret disclosure constituted "a blatant abuse of the system." ECF No. 84-1 at 6.
- The Court remarked that Swarmify was "not being honest with the judge" because

---

[1] *See, e.g.*, *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1283 (2009) ("Under the California Uniform Trade Secret Act, sanctions may be awarded for the bad faith filing *or* maintenance of a groundless action.") (emphasis in original).

- Swarmify misrepresented the scope of its purported "technology." ECF No. 78, Prelim. Inj. Sealed Tr. at 3:18-19.
- The Court determined that Swarmify's supposed trade secrets were "overbroad" and "ever-shifting."[2] ECF No. 84-1 at 5-7; ECF No. 123 at 2.
- The Court found that an argument raised by Swarmify for the first time in its reply—i.e., "that video streaming is a 'young' industry and that Swarmify's chances of legitimately competing in this industry would be irrevocably destroyed in the absence of preliminary relief"—had "no basis in fact or law." ECF No. 84-1 at 9.
- The Court noted that "Swarmify's attempts to set up its purported trade secrets as elusive moving targets do not bode well for the merits of its claims." ECF No. 84-1 at 4-6; ECF No. 123 at 2.
- The Court found that Swarmify had "made quicksand of its asserted trade secrets." ECF No. 123 at 2.
- The Court stated that "Swarmify should not be allowed to drag Cloudflare into court based on meritless arguments, only to reboot its alleged trade secrets lineup and try again when the opening skirmish illuminates glaring flaws in Swarmify's case." *Id.* at 4.
- The Court found that Swarmify's "redefining [of its] alleged trade secrets based on information gained by moving for a preliminary injunction, thereby forcing [Cloudflare] to disclose the details of its technology and defenses, raises a [] concern of abuse." *Id.* at 4.
- The Court noted that "Swarmify's bait-and-switch tactic prejudices Cloudflare[.]" *Id.* at 4.
- The Court remarked that Swarmify had "already gone quite a ways down th[e] path" of having its "evasions come home to roost in the form of an adverse ruling on the entire trade secret misappropriation claim." *Id.* at 5.

*Third*, Swarmify forced Cloudflare to respond to invasive discovery on an expedited time frame. *See, e.g., Stilwell Dev. Inc. v. Chen*, 86-CV-4487, 1989 WL 418783, at *5 (C.D. Cal. Apr. 25, 1989) ("knowing persistence in an invalid claim also demonstrates plaintiffs' subjective bad faith in causing the needless expenditure of money in defense of the trade secret claim"). Cloudflare provided extensive disclosures, declarations, expert opinions, and "public art" in connection with its Response to Swarmify's Motion for Preliminary Injunction. And, by May 3, 2018, Cloudflare had responded to requests for production, interrogatories, and requests for admission served by Swarmify.

---

[2] *Compare Gabriel Techs. Corp. v. Qualcomm Inc.*, 560 Fed. App'x 966, 973 (Fed. Cir. 2014) (upholding bad-faith finding where plaintiffs made multiple failed attempts to articulate their trade secrets but were never able to identify the specific secrets that the defendants had allegedly taken).

*See* Declaration of Steven Callahan ("Callahan Decl.") ¶ 17. Cloudflare also, per the parties' agreement concerning electronically stored information ("ESI"), gathered tens of thousands of documents from seven custodians (including Cloudflare's CEO) using eighteen of Swarmify's suggested search strings. *Id.* ¶ 18. Cloudflare hired a team of attorneys to review its ESI. *Id.* ¶ 19. In total, Cloudflare reviewed *over 65,000 documents* for possible production to Swarmify. *Id.* Cloudflare ultimately produced, by May 20, 2018, *over 9,000 documents* (comprised of over 27,000 pages).[3] *Id.* Cloudflare's actions in providing complete and prompt discovery were in accordance with this Court's instructions at the preliminary-injunction hearing to provide "a lot of discovery" and not to "stonewall[]". ECF No. 78, Prelim. Inj. Sealed Tr. at 23:17-20, 29:20-22.

Although it pressed Cloudflare for discovery, Swarmify refused to participate in discovery: Swarmify produced *only 49 documents* (comprised of 160 pages), reneged on its agreement to produce ESI, failed to produce documents identified in its Initial Disclosures, refused to provide substantive answers to basic factual and contention interrogatories,[4] and refused to proffer its witnesses for depositions. *See* Callahan Decl. ¶¶ 20-21.

Swarmify's discovery conduct shows that it never intended to develop the merits of its case. Instead, Swarmify used written and document discovery as a cost-effective way to impose asymmetrical discovery costs on Cloudflare in an attempt to create settlement leverage. Swarmify refused to provide discovery that required investment and time on its own part (e.g., affirmative depositions and responsive discovery), and focused its efforts on requiring Cloudflare to review and produce

---

[3] Notably, Swarmify did not take a *single* Cloudflare deposition in the months following the preliminary-injunction ruling. Callahan Decl. ¶ 22. If Swarmify had been truly planning to go forward with a November trial date, Swarmify would have deposed at least some of the major witnesses Swarmify had identified earlier in the litigation. *See id.* ¶ 23; Ex. 20 (Swarmify seeking e-mail discovery from fourteen Cloudflare employees). This is further confirmation of Swarmify's tactic of making Cloudflare respond to written and document discovery while not putting any work into discovery itself.

[4] For example, Swarmify refused to provide *any* substantive information in response to Cloudflare's interrogatories seeking, among other things, (i) who Swarmify disclosed its patent application to, (ii) a description of Cloudflare's alleged misappropriation, (iii) an identification of which portions of Swarmify's alleged trade secrets were publicly known, (iv) a description of Swarmify's use of its alleged trade secrets, (v) the differences between Swarmify's "technology" and other video-streaming products, (vi) information concerning Swarmify's valuations, and (vii) information concerning Swarmify's product sales. *See generally* Ex. 19, Swarmify's Resp. to Cloudflare's First Set of Interrogatories.

thousands upon thousands of documents. In short, Swarmify's refusal to comply with its discovery obligations—while insisting that Cloudflare provide extensive discovery—is additional evidence of bad faith.

*Fourth*, when it became clear that Cloudflare would not cave to Swarmify's settlement demands (nor be swayed by the "damages" allegedly owed due to the purported "value" of Swarmify and its "technology", *see* Callahan Decl. ¶ 16(h)) and faced with numerous setbacks to its case (including the Court's (i) denial of its preliminary-injunction motion, (ii) ruling on Cloudflare's Motion to Strike Swarmify's Trade Secret Disclosures, and (iii) unfavorable remarks about Swarmify's case), Swarmify sought to dismiss its claims *without* prejudice. ECF No. 134-4. In essence, Swarmify requested a mulligan in light of its litigation failures and meritless claims. A dismissal without prejudice would have allowed Swarmify to refile its case, in a different forum, and free from the rulings made by this Court concerning, among other things, the scope of Swarmify's trade-secret disclosures. Only after the Court advised Swarmify that it would not allow dismissal without prejudice (*see* July 5, 2018 Hr'g Tr. at 3:1-8, 4:14-23) did Swarmify agree to dismiss its claims *with* prejudice (*see id.* at 3:9-10; ECF No. 146, Plf.'s Suppl. to Mot. to Dismiss)—an outcome that should have occurred upon receipt of Cloudflare's preliminary-injunction response and by no event later than the Court's denial of Swarmify's preliminary-injunction motion.

In sum, the evidence demonstrates that Swarmify litigated this lawsuit in bad faith.

### C. The Court Should Award Cloudflare Its Attorney's Fees Incurred Following the Court's Preliminary-Injunction Ruling

Swarmify brought and maintained its lawsuit in bad faith, justifying an award of attorney's fees. After learning about the weaknesses in its case, Swarmify improperly used asymmetric discovery to position itself for settlement and otherwise continued its specious litigation in bad faith. Although Cloudflare believes that the Court could properly award Cloudflare all of its attorney's fees, Cloudflare only seeks to recover its attorney's fees incurred following the Court's preliminary-injunction ruling and until the Court dismissed the lawsuit with prejudice, which amount to $199,599.71 (about half of the total fees and expenses incurred by Cloudflare in the case). There can be no doubt that, by the time Swarmify received the Court's preliminary-injunction ruling, no possi-

ble good-faith basis existed to proceed with this lawsuit. The accompanying Declaration of Steven Callahan establishes the reasonableness of Cloudflare's requested fees.

### III. CONCLUSION

For these reasons, the Court should grant this Motion and award Cloudflare its requested fees.

Dated: July 24, 2018

Respectfully submitted,

**CHARHON CALLAHAN ROBSON & GARZA, PLLC**

By: s/Steven Callahan
    STEVEN CALLAHAN

*Counsel for Defendant Cloudflare, Inc.*