IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SWARMIFY, INC.,

    Plaintiff,

v.

CLOUDFLARE, INC.,

    Defendant.

No. C 17-06957 WHA

**ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES**

## INTRODUCTION

In this action for trade secret misappropriation, defendant moves for attorney's fees and costs. For the reasons stated below, the motion is **GRANTED IN PART**.

## STATEMENT

Plaintiff Swarmify, Inc., a small start-up, formed in 2013 with the sole purpose of creating and bringing to market a method for more reliable and affordable internet video streaming. In February 2016, Swarmify contacted defendant Cloudflare, Inc., a corporation that formed in 2009 and uses a network of data centers to offer reverse-proxy and content delivery services to other companies, about a potential business deal. In April 2016, the parties entered into a non-disclosure agreement and negotiations ensued. In May 2016, however, negotiations broke down and the parties parted ways.

In September 2017, defendant Cloudflare, Inc., published two blog posts — which provoked the instant action — marking the launch of its own video streaming service "Cloudflare Stream." Upon reading the blog posts, Swarmify CEO Nathan Barnett suspected Cloudflare of using Swarmify's purported proprietary technology in violation of the parties'

1  non-disclosure agreement. He quickly raised the issue with Cloudflare's in-house counsel,
2  stating that he was "still operating under the assumption that this [was] just an oversight made
3  in the chaos of a fast growing organization" and that he was "happy to resolve in a way that
4  makes sense on all sides." Cloudflare's in-house counsel promised to investigate. After
5  Cloudflare's failure to follow up, Swarmify again requested, this time formally through its
6  counsel, an explanation of the blog post. In December 2017, after Cloudflare again failed to
7  respond by Swarmify's requested October 25 deadline, Swarmify filed this instant action,
8  alleging trade secret misappropriation and related state law violations (Dkt. No. 167-1 ¶¶ 4–7,
9  Exh. 3).

Later the same day this action was filed, Cloudflare responded, claiming it had evidence disproving misappropriation of Swarmify's technology and that it would provide Swarmify with that evidence by the end of that week. Swarmify's counsel requested that the purported evidence be shared under a protective order, stated that Swarmify would "of course not continue to pursue the case" if the evidence disproved its case, and further requested Cloudflare to provide a protective order agreement. Six days later, when no protective order agreement was offered, Swarmify served its complaint on Cloudflare. Upon being served, Cloudflare then responded, stating that it would send Swarmify an agreement. On December 22, 2017, when no agreement or evidence materialized one week after, Swarmify filed its motion for preliminary injunction. On February 27, 2018, the motion was denied (Dkt. No. 83; Dkt. No. 167-7 ¶¶ 2, 5, 7, Exh. 1).

Swarmify maintains that throughout most of this litigation, Cloudflare's defense rested on the grounds that Swarmify's video streaming technology did not constitute a trade secret because (1) many parts of the technology are publicly available, and (2) Cloudflare created the technology at issue independently. On May 9, however, Cloudflare "sprung a new defense" during a mediation session supervised by Judge Jacqueline Corley that "radically altered this case" — namely, ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████ Upon confirming this new defense, Swarmify sought to settle with Cloudflare.

2

When settlement talks fell through, Swarmify moved to dismiss the instant action — initially without prejudice on June 14, and subsequently with prejudice pursuant the undersigned judge's advisement during the hearing on Swarmify's request to stay discovery pending ruling on the motion to dismiss. On July 10, the instant action was dismissed with prejudice (Dkt. Nos. 135, 145, 150, 167 at 8; Dkt. No. 167-1 ¶ 8).

Cloudflare now moves for attorney's fees and costs under the California Uniform Trade Secrets Act, the federal Defend Trade Secrets Act, and the Court's inherent powers to award attorney's fees. Specifically, Cloudflare seeks attorney's fees and costs — amounting to $199,599.71 — incurred following the February 27 order denying Swarmify's motion for preliminary injunction until the case was dismissed with prejudice on July 10. Cloudflare contends that since at least the order denying the motion for preliminary injunction, Swarmify maintained the instant action in bad faith.

This order follows full briefing and oral argument.

**ANALYSIS**

Under the California Uniform Trade Secrets Act and the federal Defend Trade Secrets Act, a prevailing party may be awarded reasonable attorney's fees and costs if a claim of misappropriation is made in bad faith. CAL. CIV. CODE § 3426.4; 18 U.S.C. § 1836(b)(3)(D). Courts also have the inherent authority to award attorney's fees. *Tapgerine, LLC v. 50Mango, Inc.*, No. C 16-06504 WHA, 2017 WL 1956874, at *1 (N.D. Cal. May 11, 2017).

Because neither the California Uniform Trade Secrets Act nor the federal Defend Trade Secrets Act defines "bad faith" in the context of trade secret misappropriation, "courts generally adopt a two-pronged standard for the evaluation of such claims." *Farmers Edge Inc. v. Farmobile, LLC*, No. C 16-191, 2018 WL 3747833, at *6 (D. Neb. Aug. 7, 2018) (Judge Joseph F. Bataillon). The party seeking attorney's fees must show (1) the objective speciousness of the claim, and (2) the subjective bad faith in bringing or maintaining the claim. *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1111 (9th Cir. 2007) (quoting *Gemini Aluminum Corp. v. California Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1262 (2002)).

Objective speciousness "exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. C 08-1992 AJB (MDD), 2013 WL 410103, at *7 (S.D. Cal. Feb. 1, 2013), *aff'd*, 560 F. App'x 966 (Fed. Cir. 2014) (Judge Anthony J. Battaglia) (quoting *FLIR Sys.*, 174 Cal. App. 4th at 1276 (2009). "Objective speciousness may be shown by, among other factors, demonstrating that there was no misappropriation or threatened misappropriation or that the opposing party could not have suffered any economic harm." *Ibid*.

Subjective bad faith "means the action was commenced or continued for an improper purpose, such as harassment, delay, or to thwart competition." *SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 847 (2012). "The timing of the action may raise an inference of bad faith. Similar inferences may be made where the plaintiff proceeds to trial after the action's fatal shortcomings are revealed by opposing counsel." *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1278 (2009) (citations omitted). "The absence of evidence alone, even after discovery," however, "does not support a finding of subjective bad faith." *SASCO*, 207 Cal. App. 4th at 847.

This order finds that the record, as a whole, does not provide sufficient evidence to infer subjective bad faith while Swarmify pursued its claims against Cloudflare's original defenses. Upon learning of and confirming Cloudflare's new defense raised during mediation, however, Swarmify should have immediately sought to dismiss the instant action, as the new defense unquestionably rendered Swarmify's misappropriation claim objectively specious. This order therefore finds that Swarmify maintained the instant action in bad faith from May 23, after Swarmify verified Cloudflare's new defense, to June 10, right before Swarmify first offered to dismiss this case.[1]

*First*, the timing of Swarmify's conduct indicates that Swarmify's initial primary concern in bringing this suit — regardless of how specious its claims may be — was to protect its alleged trade secrets. For example, soon after Cloudflare published the two blog posts that

---

[1] The parties have agreed to disclose confidential settlement material for the purposes of this motion, notwithstanding the provisions of Federal Rule of Evidence 408 and ADR Local Rule 7-4 (Dkt. No. 168).

4

set off the instant litigation, Swarmify's CEO emailed Cloudflare's in-house counsel, stating that he believed the posts described Swarmify's trade secrets but that he was giving Cloudflare the benefit of the doubt, and expressing his desire to resolve the issue "in a way that makes sense on all sides" (Dkt. No. 167-1, Exh. 3). Moreover, Swarmify continuously expressed its desire to take Cloudflare up on its offer to see evidence disproving misappropriation (*see, e.g.*, Dkt. No. 167-7, Exh. 1).

*Second*, Cloudflare suggests that Swarmify's continued pursuit of the instant action at least since the order denying Swarmify's motion for preliminary injunction shows that Swarmify knowingly pursued a meritless claim in bad faith. It is true that previous orders, including the preliminary injunction order, have expressed skepticism over the merits of Swarmify's trade secret claims, particularly given Swarmify's ever-shifting descriptions of its technology. This order, however, does not find Swarmify's continued advocacy of its trade secret claims (before learning of the new defense) — regardless of their merits — as evidence amounting to subjective bad faith. As Swarmify notes, the preliminary injunction order explicitly declined to reach the likelihood of success of Swarmify's claims (Dkt. No. 88 at 10). And, the instant action was dismissed before any further chance to reach the merits of Swarmify's trade secret claims (and Cloudflare may not use a motion for attorney's fees as a backdoor way to do so).

As for Swarmify's amended disclosures, Swarmify clarified that it believed the order denying its motion for preliminary injunction amounted to "an instruction to provide clarification on [Swarmify's] claimed trade secrets" and that if that was not the message of the order, it would be "content to stand on its Original Disclosure" (Dkt. No. 107 at 2). After the order granting in part Cloudflare's motion to strike the amended disclosures gave Swarmify an option between the two disclosures (subject to conditions), Swarmify chose to stick with its original disclosures (Dkt. Nos. 123 at 5–6; 124). As such, Swarmify's amended disclosures do not, under the current record, support a finding of subjective bad faith.

*Third*, Cloudflare contends that it has borne much of the discovery burden following the hearing for motion for preliminary injunction and that Swarmify had "refused" to participate in

discovery. As such, according to Cloudflare, Swarmify used written and document discovery "as a cost-effective way to impose asymmetrical discovery costs on Cloudflare in an attempt to create settlement leverage" (Dkt. No. 156 at 6). As Swarmify points out, however, once Cloudflare revealed its new defense during mediation, Judge Corley directed Cloudflare to produce documents responsive to Swarmify's requests for production to enable Swarmify to verify Cloudflare's new defense (Dkt. No. 167-7 ¶ 9).

Moreover, Swarmify itself sought to dismiss its own case. Clearly, Swarmify's reason for dispensing with discovery was because it chose not to prosecute its own case at that stage rather than for some other bad faith purpose. This is reflected in its request to stay discovery pending ruling on its initial motion to dismiss without prejudice, as Cloudflare itself continued to seek discovery (*see* Dkt. No. 139). *Stilwell Development Inc. v. Chen*, No. C 86-4487, 1989 WL 418783, at *5 (C.D. Cal. Apr. 25, 1989) (Judge George H. King), is thus distinguishable, which Cloudflare cites for the proposition that "knowing persistence in an invalid claim also demonstrates . . . subjective bad faith in causing the needless expenditure of money in defense of the trade secret claim." There, the plaintiffs knew they had no proof of trade secret misappropriation, yet pursued the claim through their case in chief — and caused needless expenditure in defense. *Ibid*. As such, though Cloudflare bore the lion's share of the discovery process, the record does not sufficiently suggest the ulterior motives of which Cloudflare accuses Swarmify.

*Fourth*, Cloudflare mischaracterizes Swarmify's initial desire to dismiss this action without prejudice. There is no indication that Swarmify sought a "mulligan" in order to "refile its case, in a different forum, and free from" this Court's rulings, as Cloudflare asserts (Dkt. No. 156 at 7). Rather, the record indicates that Swarmify, recognizing its premature action, sought to maintain the ability to protect what it believes are its trade secrets ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see* Dkt. No. 135 at 7). Swarmify itself offered to agree to require any future-filed suit to be returned to this Court in the same procedural posture. This evidences its good faith in seeking dismissal (*id*. at 11–12).

6

*Fifth*, this order is not persuaded that Swarmify's initial conduct during settlement discussions demonstrates subjective bad faith. Swarmify's initial settlement demands proffered in its settlement statement — which were made before learning of Cloudflare's new defense — were not so inflammatory such that they demonstrate bad faith. The settlement demands, even if arguably excessive, were negotiating standpoints.

Upon learning of and confirming Cloudflare's new defense, however, Swarmify should have immediately sought to dismiss the instant action. At the May 9 mediation session supervised by Judge Corley, Cloudflare revealed its new defense that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ — at which point Swarmify readily conceded that, if the defense was proven true, it no longer had a case and was therefore ethically prohibited from moving forward with its misappropriation claim (Dkt. No. 167-1 ¶ 8).

Based on Cloudflare's revelation during mediation, Judge Corley set a schedule to allow Swarmify to confirm the veracity of Cloudflare's newly asserted defense. A phone call between Swarmify CEO Nathan Barnett and a Cloudflare engineer was set for May 22, during which Mr. Barnett could (and did) confirm Cloudflare's new defense. Judge Corley also instructed Cloudflare to produce by May 14 documents showing ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ so that Mr. Barnett could discuss them with the Cloudflare engineer if necessary (Dkt. No. 167-1 ¶ 9; Dkt. No. 172, Exh. 4).

On June 11, Swarmify offered during settlement discussions to dismiss the instant action *without* prejudice — a procedural posture it believed was necessary to retain the ability to bring a future misappropriation claim ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. When it became clear that Cloudflare would only agree to a dismissal *with* prejudice — a procedural posture Cloudflare believed would prohibit Swarmify from ever bringing a misappropriation claim again — Swarmify moved to dismiss without prejudice on June 14.

Swarmify argues that Cloudflare ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Dkt. No. 174 at 2). Instead, Cloudflare "wast[ed] the time of Swarmify and its counsel" by "permitt[ing] Swarmify to go on

7

believing for seven months after Swarmify first raised the issue" that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 174 at 5; Exh. 4 at 4–5). It was thus Cloudflare's ▮▮▮▮▮▮▮▮▮▮, Swarmify argues, that instigated this action and therefore its attempt to settle was warranted. During these settlement talks, Swarmify asserted that it had a ▮▮▮▮▮▮▮▮▮▮ and thus it may bring a separate action to pursue the claim (Dkt. No. 172, Exh. 4 at 4–5).

The fact remains, however, that Swarmify was ethically obligated to drop its misappropriation claim once Cloudflare proved its new defense on May 22 (as Swarmify itself readily concedes) — a defense which indisputably rendered Swarmify's misappropriation claim objectively specious. Swarmify failed to do so and instead attempted to settle (and thus extract some gain from Cloudflare) before offering to freely dismiss the case (without prejudice) on June 11. Its failure to do so immediately is sufficient to infer subjective bad faith. This order thus finds that Swarmify maintained the instant action in bad faith from May 23 to June 10 and accordingly awards Cloudflare attorney's fees and costs for this time period in the amount of $9,730.50.[2]

## CONCLUSION

For the foregoing reasons, Cloudflare's motion for attorney's fees and costs is **GRANTED IN PART**. Cloudflare is hereby awarded $9,730.50 in fees and costs.

**IT IS SO ORDERED.**

Dated: September 28, 2018.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[2] This order notes that Swarmify does not dispute the reasonableness of Cloudflare's requested attorney's fees and costs.

8